## ASSOCIATED INDUSTRIES OF OKLAHOMA et al. v. STATE INSURANCE BOARD et al.

No. 23167.     June 4, 1935.

Rehearing Denied June 25, 1935.

Rainey, Flynn, Green & Anderson, for Associated Industries of Oklahoma, Industrial Gas Company of Oklahoma, Flynn Oil Company, and Oklahoma Publishing Company.

A. Scott Thompson, for Tri-State Zinc & Lead Ore Producers Association, Tulsa Lead & Zinc Company, and Beck Mining & Royalty Company.

O. J. Logan, for Oklahoma Retail Merchants Association and John D. Thomas Company.

J. Berry King, Atty. Gen., and Rittenhouse, Webster & Rittenhouse, for respondent.

WELCH, J. The matter originated with the filing with said board of a revised schedule of rates for workmen's compensation insurance in the state, May 19, 1931. The revised schedule amounted to an average increase of approximately 57.9 per cent. over the rates theretofore obtaining.

Our statutes provide that the State Insurance Board shall have supervision and authority over such insurance rates (section 10533) and provide for the filing of such schedule of rates by or for insurance companies operating in the state (section 10534), with specific authority in said board to pass upon such rates, and to approve the same if reasonable, or to require reduction if such rates are excessive, and to require the filing of higher rates if such rates as scheduled and filed are inadequate (section 10536). That section requires that in every case the rate shall be reasonable. Determination thereof to be made and reasonable rates to be enforced and maintained by such board.

To the revised schedule of rates filed as aforesaid, written objections and protests were filed, and those protesting requested a hearing before the board, and requested that prior to such hearing, the board by proper order require every insurance company transacting such character of insurance business in the state to furnish detailed information of its business in Oklahoma for the preceding five years, showing minute details as to the formation of the company, the method and manner of transacting business, details as to premiums received, and losses, details as to expenses of operation, earnings, etc. Such preliminary order was made by the board, and such in-

formation in due time received by the board. It is shown in about 2,000 pages in the record, vol. 3.

Thereafter hearings were held by the board, the interested parties appearing and presenting their documentary evidence and interrogating witnesses. At the conclusion of the hearings the board, "from the evidence submitted, and from such evidence as it had gathered, * * *" made and entered its order approving the rate for workmen's compensation insurance in Oklahoma, effective as of October 1, 1931. That board did not approve the rate as filed by and for the insurance companies, amounting to an average increase of 57.9 per cent. over the former rates, but did approve and fixed a rate amounting to an average increase of 47.5 per cent. over the rates in effect prior to October, 1931. The petitioners instituted this action under section 10547 to review that order of the State Insurance Board, and seek to have that order vacated upon various grounds hereafter noted.

Petitioners urge that the order of the board is not supported by, and is contrary to, the evidence. The record is quite voluminous, containing many hundred pages of evidence. Without undertaking any detailed statement of the evidence, it may be classified as detailed reports of insurance companies furnished on demand of the board; documentary evidence of reports on workmen's compensation insurance; oral testimony of witnesses as to facts in reference to the conduct and operation of workmen's compensation insurance business; oral testimony of witnesses in the nature of opinions; and testimony offered as expert testimony. The matter was thoroughly presented by all parties, including those who sought to have a higher rate approved, and those who sought the approval or fixing of the lower rates. If the board had given controlling prominence to some portions of the evidence, they might have fixed and approved higher rates, that is, portions of the evidence would justify higher rates; upon the other hand, some portions of the evidence would justify lower rates than those approved by the board. The statute expressly requires that the board see to it that the rates are not exorbitant, but also expressly require that the board see to it that the rates are adequate to the safety and soundness of the companies engaging in this business. The rates must not be exorbitant, because those who are required by law to carry this character of insurance must not be required to pay an exorbitant or unreasonable amount therefor. Upon the other hand, the rates must be adequate, because if they are inadequate, then the insurance companies cannot maintain soundness and solvency, and the value to the workmen of the state of the Workmen's Compensation Law to some extent, and of the workmen's compensation insurance, depends upon the soundness and solvency of the insurance companies engaging in this business. And the law specifically requires the board to see to it that in every case the insurance rate is reasonable.

It should not be the purpose of the board to fix the rate at the highest figure justified by any portion of the evidence, as that might not be in all respects the reasonable rate under all of the evidence. Upon the other hand, it should not be the purpose of the board to fix the rate at the lowest figure indicated by any of the evidence, as that might not be in all respects an adequate rate. As to the duty of the board in determining whether a rate, or which rate, should be approved by the board, perhaps no better rule could be laid down than the rule of the statute, and that is, in substance, that such rate should be a reasonable one, not excessively high and not inadequately low. With these rules in mind, the board should consider all of the evidence presented by either of the parties, or obtainable by the board. We must not assume that the State Insurance Board, charged with these important responsibilities, would or has in this case proceeded without thorough diligence. The record here shows that the board proceeded with much care and thoroughness. When the revised schedule of rates was filed, and protests presented thereto, the board, upon request of the protestants, made its order and required all insurance companies writing workmen's compensation insurance in Oklahoma to file reports. These reports were filed in most minute detail, and these reports, together with all of the evidence presented, were considered by the board. In determining whether the insurance rates are reasonable, excessive, or inadequate, resort must be had largely to prior experiences in that field, with due regard to operating expenses, losses, and such other items as would have a direct bearing upon the particular inquiry. It may be said that there is no method of arriving at the exact rate which could be demonstrated to a mathematical certainty as being the exact figure which will be exactly reasonable,

44

with not the slightest excessiveness nor the slightest inadequacy. It is true, of course, that mathematical calculations enter largely into the consideration leading to the final conclusion, but judgments of men and of tribunals may differ as to the final rate figure to be adopted and approved as being reasonably adequate and not excessive. It must be taken as the policy of our law that the studied judgment of the State Insurance Board is controlling in the matter and shall be final, and govern as between the contending parties, and as to the people of the state, unless that judgment on review is found to be contrary to the law or the evidence, or not supported by the evidence. It is clear that the order here under consideration is not contrary to the evidence and is supported by the evidence.

As a further ground to vacate the order of the board, the protestants urge that substantially all of the evidence offered by the proponents of the revised schedule of rates is incompetent, irrelevant, and immaterial. That contention cannot be sustained. It is true that some of the answers given in oral testimony were not based upon exact knowledge of the witnesses, and perhaps had no direct bearing upon the ultimate matter of inquiry. This might well be said to be true also as to some of the details of information furnished in the reports by the insurance companies which were obtained upon specific requests of the protestants before the board, who are petitioners here. However, there is no indication that the board gave any controlling prominence to any such items of evidence. We may well assume from the record that both of the contending parties presented to the board all of the evidence reasonably obtainable, and in the clearest and most convincing form in which it could be presented. We find in the record but little, if any, evidence at all subject to such objection as is here presented, and our conclusion that there is ample competent evidence fully disposes of this contention. See Cobb v. Whitney, 124 Okla. 193, 255 P. 577.

Petitioners contend that expert testimony is usually regarded with disfavor. The record does contain much expert testimony. However, the record is replete with other evidence, both oral and documentary. The expert testimony is not contradicted, but, to the contrary, is corroborated by such other evidence. Where determinations and judgments may be based upon facts proven, rather than expert testimony, it is true that the former character of evidence will

be a more satisfactory guide, but for many years expert testimony has been acceptable in all of the courts, and if restricted to its proper field, it is not subject to our condemnation. See Small v. Comer, 171 Okla. 418, 43 P. (2d) 716, for some discussion of expert testimony and expert witnesses. This court has approved the use of expert testimony in so many cases that we deem it wholly unnecessary to treat the subject further.

In Bullion, Insurance Com'r, v. Aetna Insurance Co. et al., 237 S. W. 716, the Supreme Court of Arkansas considered an action similar to this, to review an order of the Insurance Commissioner of that state, and in the body of the opinion that court rather criticised, or, to some extent, discounted the testimony of witnesses who were not qualified as insurance experts. It must be apparent that in such a proceeding as this the testimony of expert witnesses might be of great value in aiding the State Insurance Board in the discharge of its duty. It is not to be inferred that such testimony is to be taken as controlling merely because it is given by qualified insurance experts in the form of expert testimony, but there is nothing in this record to indicate that the expert testimony received, was taken as controlling to the exclusion of any of the other evidence considered. Some of the expert testimony, if taken alone, would have justified much higher rates.

The protestants and petitioners here insist that in determining rates, losses should be considered upon the basis of losses actually paid instead of incurred. In support of this proposition cases dealing with fire insurance rates are cited, where it is generally held that consideration of losses paid is the better criterion. On the other hand, it is urged by the respondent that in workmen's compensation insurance matters, losses to the insurance carrier may be incurred, and in fact firmly fixed, yet not paid or payable in some cases until years in the future. A casual reference to our own Workmen's Compensation Law, and our decisions in such cases, demonstrates that it is so. While in the case of fire insurance losses, the actual final payment of the loss is far closer in point of time to the determination or the fixing of the loss, we are satisfied that the reasons guiding to the conclusion that as to fire insurance rates the actual losses paid are a better guide than losses incurred, cannot apply with equal force in the case of workmen's

compensation insurance rates. In so far as petitioners here insist that losses paid should be considered to the exclusion of losses incurred, we do not agree. It must be apparent that losses incurred would be some aid to the State Insurance Board in discharging its duty, and if that is true, then the losses incurred should properly be considered by the board. In this case there was evidence both of losses incurred as well as losses actually paid. We think all of the evidence was properly considered by the board.

The petitioners and protestants here urge that rates should be determined by the actual experience of the insurance companies over a period of not less than five years. In some states this period of time is prescribed by statute, but our own statutes are silent on the point, evidently intending to leave it to the State Insurance Board to determine the matter from the best evidence obtainable. We find no specific fault with this contention as stated by petitioners. It may be that the five-year period would be more reliable than a shorter period. It might also be true, at least in some instances, that a six-year period would be better than the five-year period. The true rule must be that past experiences should be considered over a sufficient period to guide the Insurance Board fairly and justly to a determination and approval of a rate that is reasonable and neither excessive nor inadequate. In this case the board received and considered reports from the insurance companies in the state covering a five-year period. It is true that when the proponents filed the revised schedule of rates they did not at that time furnish complete figures based on the expense of five years, but used a period somewhat shorter. However, it is clear that the board considered all of the evidence, both as to the five-year period and as to the shorter period. They did not approve the highest possible rate justified, but did approve a rate materially smaller, which they deemed to be both reasonable and adequate. This proposition, therefore, can form no basis for vacating the order here considered.

Petitioners next insist that there is no evidence to justify the expense of doing business, or "expense load," presented and urged as being the proper figure by the proponents of the revised schedule of rates. In determining reasonable and adequate rates, it is of course essential that consideration be given to this expense of do-

ing business. The rate should not be fixed upon the basis of the allowance of the expense load at the highest figure of expense shown by any one of such companies, nor is it necessarily true that figure should be based upon the lowest expense incurred by some one of such companies who might have a specially fortunate record in that respect. The trial record discloses that there is some variance in the expense of doing business, as there is variance in the items of losses. It is the duty of the board, from a consideration of all of the evidence, to consider a reasonable expense load and no more. Some of the evidence presented, if taken alone, would have justified a far greater expense load than the proponents of the revised schedule of rates contended for in the beginning. There is no showing in the judgment and order of the board as to what exact figure they determined upon as being the proper expense load figure, but that board did reduce the final rate from the figure originally contended for in the revised schedule, which indicates that the board did not adopt the figure of expense load first presented in the revised schedule, but, on the contrary, allowed or adopted and considered a somewhat lesser figure. There being some evidence justifying the larger figure, and much evidence justifying the figure originally presented in the revised schedule, it is at once apparent that there was ample evidence to sustain and justify the ultimate conclusion of the board in this regard.

The final judgment or order of the State Insurance Board was, by its express terms, based upon the several hearings at which all parties appeared and participated, and upon all of the evidence submitted by the contending parties, and such further evidence as the board had gathered and obtained. This other evidence was not mere thought or conclusion the part of members of the board, but was documentary evidence and reports copied in the record. The record fully indicates the board considered these important questions in the light of existing conditions in the state, as indicated by the evidence. The record indicates to us, as it did to the board, that an increase of the rates in existence prior to October, 1931, was necessary in order that the rates should be adequate for the soundness and safety of the companies writing workmen's compensation insurance in Oklahoma, to the end that reliance might be placed upon such companies, and upon such insurance, and to the ultimate end that workmen injured

and maimed in industry in the state might collect compensation awarded them for their injuries, and to which they were justly entitled. It is the express policy of the state that such insurance rates should possess such character of adequacy, and the express duty of the State Insurance Board to approve and enforce such character of rates. It was in the discharge of that duty that the board approved the rate amounting to such increase. It is the further policy of the state, however, that while such rates should be adequate, they should not be permitted in any case to be unreasonable or excessive, to the end that industry in the state shall not be penalized in the name of workmen's compensation insurance to the unjust enrichment of the companies writing workmen's compensation insurance, and it is expressly made the duty of the State Insurance Board to approve and enforce only such rates as will not possess such character of unreasonableness or excessiveness. It was in discharge of that duty that this board declined to approve the higher rate originally presented in the filing of the revised schedule of rates.

We find that the board acted properly in the discharge of its duty, and that the determination of the board is sustained by competent evidence, and is not contrary to the evidence, and appears to us, from the record, to be a fair and just determination under all of the evidence shown in the record.

We, therefore, conclude that the petition of protestants to vacate or annul the order of the State Insurance Board should be denied, and it is so ordered.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. BUSBY, J., absent.