## AMERICAN DRUGGISTS' FIRE INS. CO. OF CINCINNATI v. STATE INSURANCE BOARD et al.

No. 27705.   Sept. 27, 1938.

Rehearing Denied Nov. 29, 1938.

J. Berry King, George J. Fagin, Frank H. Freericks, and David P. Pickrel, for petitioner.

Mac Q. Williamson, Atty. Gen., Houston W. Reeves, Asst. Atty. Gen., Rittenhouse, Webster & Rittenhouse, and John Barry, for respondent.

HURST, J. This is an action to review a final order of the State Insurance Board entered on December 15, 1936. The facts preceding the rendition of the order, giving rise to the action in this court, may be briefly stated: The petitioner here is the American Druggists' Fire Insurance Company of Cincinnati, Ohio, engaged in the business of writing fire insurance policies for retail drug store owners. The company was organized about the year 1907 and now operates in 42 states and the District of Columbia. under a plan of a uniform 25 per cent. reduction in what they refer to as "board" or "bureau" rates. Along in 1918 the board of directors of the company/ decided they should like to enter into Oklahoma for business and they directed their secretary and general manager to communicate with the insurance authorities of this state to learn whether they could use their 25 per cent. uniform reduction rate plan. They were accordingly advised by the then Insurance Commissioner that "in the event that you make a uniform reduction of 25 per cent. from the estimates of rates promulgated by the Oklahoma Inspection Bureau, however, I do not believe that the charge of discrimination would lie against your company, as I have always entertained the opinion that where these rates were uniformly reduced by a certain per cent. applied to all rates alike there was no discrimination." Thereupon, in 1919, with reference to the admission of the company into this state, it addressed communications to the Insurance Commissioner, the State Insurance Board, and the Oklahoma Inspection Bureau, subscribing to said bureau and advising that they would make a uniform 25 per cent. reduction in the bureau rates. In reply, the Insurance Commissioner stated that they could make a uniform reduction in the rates of the Oklahoma Inspection Bureau providing their action in that regard was filed with the State Insurance Board, "which I am sure will be satisfactory to the other members of the board as well as myself." The plan of reduction was then filed direct with the State Insurance Board by the company and a power of attorney was given to the Oklahoma Inspection Bureau authorizing it to file with the State Insurance Board the general basis schedule showing rates on all risks insurable by the company. It does not appear from the record whether any formal action was taken on the part of the State Insurance Board with respect to permission to use the rate reduction plan, but it appears that the company thereupon proceeded to conduct its business in this state under its reduction plan. Subsequently, in 1935, the State Insurance Board advised the petitioner that it was requiring all companies operating in the state and making exceptions from the rates of the Oklahoma Inspection Bureau to refile their exceptions or deviations, which request was complied with by petitioner. Thereafter, under date of July 11, 1936, the State Insurance Board issued a communication addressed to all fire insurance companies containing the following order:

"The State Insurance Board of Oklahoma * * * now desire to advise that on and after September 1, 1936, all granted exceptions from General Basis Schedules are hereby withdrawn and all companies are hereby instructed to adopt manual and rules as set forth in Basis Schedules of the Oklahoma Inspection Bureau (not affecting companies confining their writing solely to sprinklered risks on specific lines)."

"All companies herein referred to are respectfully· requested to take immediate steps to arrange membership in the Oklahoma Audit Bureau, which Bureau is under the supervision, direction and control of the State Insurance Board through which all policies of insurance written in Oklahoma must be submitted as approved."

Upon receipt of this order the petitioner requested a reconsideration. as to it, on the ground that under their 25 per cent. reduction plan they had been making a satisfactory profit and that the company was relatively the financially strongest fire insurance company operating in this country. Pursuant to ensuing correspondence a representative of the State Insurance Board called at the home office of petitioner and made a report to the board relative to the financial condition of the company. Upon further refusal by the board to alter its order as to petitioner, a hearing was requested and granted, at which hearing petitioner appeared through its secretary, general counsel, and general manager and, from the testimony given, together with certain exhibits, the facts as here briefly discussed were presented to the board. At the close of the hearing, the board, by a two to one vote, on December 15, 1936, ordered that its ruling of July 11, 1936. hereinabove set out, become final, whereby the petitioner was denied the right to continue its plan of a uniform 25 per cent. reduction in rates. Petitioner brings this action as authorized by statute to review said final order.

■ For a better understanding of the matters herein discussed, it may be well to explain roughly the functions of the various boards referred to as they now operate. The Oklahoma Inspection Bureau is a private enterprise maintained by the various companies and its function is to compile the general basis schedule which sets out the rates for the risks insured. These rates are commonly referred to as manual rates. The manual rates are filed with the State Insurance Board. The · Oklahoma Audit Bureau is another private enterprise maintained by the insurance companies to see to it that the manual rates are carried out in each policy issued. The controversy here involves the right of petitioner to deviate from the manual rates filed by the Oklahoma Inspection Bureau by using a uniform 25 per cent. reduction in such rates in the issuance of its policies.

There is considerable disagreement in the briefs of the parties as to the exact issues here involved. The fundamental question is the meaning, intent, and purpose of the statutes constituting the Oklahoma rating law. More specifically, we must construe the statutes with respect to determining the correctness of the following contentions advanced by the respective parties: (a) Respondent construes the rating law to give the State Insurance Board authority to fix or approve a uniform rate for fire insurance companies based upon the experience of all the companies collectively as deduced from the general basis schedule filed with the board by the Oklahoma Inspection Bureau, and contends that when the rate is so fixed or approved by the board there can be no deviation therefrom by any one company. It is argued that the statutes contemplate that companies will all charge the same rate, and that there will be no open competition between companies. (b) On the other hand, petitioner contends that the board has no authority to fix or approve any uniform rate applicable alike to all companies, but that each company shall file its own general basis schedule based upon its own underwriting experience, so that there may be as many general basis schedules or separate rates as there are companies; but that if the board shall determine that the rate submitted by any one company is excessive or unreasonably high, or inadequate to the safety or soundness of the company, the board is authorized to direct the company to file a higher or lower rate as the case may be; that when the rate of any one company is filed and not found to be excessive or inadequate, then there shall ·be no deviation from said rate by the company in dealing with the insuring public. It is argued that the purpose of the law is to· preserve open competition between the various companies, but at the same time prevent discrimination by any company in its dealing with the insuring public.

The State Insurance Board was created in 1915 (sec. 10533, O. S. 1931, 36 Okla. St. Ann. sec. 131) and is given "authority and supervision and regulation over fire, tornado and plate glass insurance rates, and rates of insurance for legal liability of employees and rating bureaus and granting and revoking of insurance agents' license as is provided by this act." Section 10534, O. S. 1931 (36 Okla. St. Ann. sec. 132), provides that "every fire * * * insurance company * * * shall file with the said board a general basis schedule, showing the rates on all classes of risk insurable by such fire * * * insurance company * * * in this state and all charges, rates, terms, privileges and conditions which in any way might affect such aforesaid rates or the

value of the insurance as issued to assured." Section 10535, O. S. 1931 (36 Okla. St. Ann. sec. 133), provides that no change shall be made in the schedules which have been filed in compliance with the above provisions, except after ten days' notice, in which case the change shall be made by filing a new schedule, or by clearly indicating it on the one in force. Section 10536, O. S. 1931 (36 Okla. St. Ann. sec. 134), sets forth the authority of the board in so far as it may have the right to approve or fix rates. It provides that "when said board shall determine that any rate made by such insurance company in this state is excessive or unreasonably high, or that said rate is inadequate to the safety or soundness of the company granting the same, it is authorized to direct said company to file a higher or lower rate, commensurate with the risk, but in every case the rate shall be reasonable." Section 10537, O. S. 1931 (36 Okla. St. Ann. sec. 135), specifies the restraint against deviation interpreted differently by both parties. It provides that "no insurance company shall engage in the insurance of any property, * * * unless the schedule of rates under which property * * * is insured has been filed in accordance with the provisions of this act, nor shall any fire * * * insurance company * * * write any insurance at a rate different from that named in this schedule or remit or refund in any manner or by any device any portion of the rates so established or extend to any person any privileges or inducements except as specified in such schedule."

Section 10540, O. S. 1931 (36 Okla. St. Ann. sec. 138), prohibits such insurance companies from "directly or indirectly, by any special rate, tariff, rebate, or other different charge," collecting a different premium from one person than is collected from another in a like situation, and the violation of this section constitutes unjust discrimination. And it is also provided in section 10551, O. S. 1931 (36 Okla. St. Ann. sec. 149), that no company shall allow any rebate or special favor, excepting, however, mutual companies and reciprocal associations.

Considering all the sections together, we think it was the intention of the Legislature to prevent unjust discrimination and the charging of different rates by any one company as between the purchasers of insurance, but at the same time permit competition among the companies. The interpretation urged by petitioners in this regard is substantially correct except in one respect. It is true that there is no specific provision in the act authorizing the board to fix or approve rates. However, in Associated Industries v. State Insurance Board (1935) 173 Okla. 41, 46 P.2d 361, we said that it was the duty of the board to approve rates filed by or for workmen's compensation insurance carriers (the act being applicable to such carriers as well as fire insurance companies) or to approve such other rates as fixed by the board. By the authority granted in section 10536, supra, "to direct said company to file a higher or lower rate" when the rate filed by the company is excessive or unreasonably high, or inadequate, the board inferentially has the power to approve rates. The right to approve rates is the antithesis of the right to disapprove rates as authorized by said section. But the approval or disapproval of "any rate made by such insurance company" must be made by a determination that such rate is either excessive or inadequate, and it does not follow that the board has authority to approve or fix a uniform rate which shall apply to all companies irrespective of whether a different rate "made by such insurance company" is excessive or inadequate. By section 10534, supra, **every** fire insurance company is required to file a general basis schedule showing the rates to be charged by that company. By section 10535, supra, such schedule or rate may be amended. Thereafter the rate as filed and amended is subjected to the test of approval as specified in section 10536, supra, and when once established in such manner, it is then that section 10537, supra, prevents such company from writing "any insurance at a rate different from that named in this schedule."

Petitioner argues that the reasonableness of the rate is determined by the underwriting experience of the individual company making the filing. Theoretically this is correct. However, the extent of the underwriting experience of all the companies (as evidenced by the schedule compiled by the Oklahoma Inspection Bureau) may be looked to for the purpose of determining the reasonableness. This amounts to nothing more, in fact, than a finding that, based upon its own underwriting experience, any other rate would be unreasonable. Also the collective experience may be looked to in order to determine by comparison the reasonableness of the rate in other particulars, as where the individual experience may appear to be insufficient or not demonstrative of reasonably anticipated future experience. But where it appears by reason

of special circumstances that a different rate for any one company is reasonable and safe, the collective experience of all the companies where that special circumstance may not exist need not be considered as applicable in that instance. These are matters for the consideration of the board in determining in a given case whether the rate asked for is excessive, inadequate, or reasonable.

From the arguments presented in the briefs, we take it to be common practice for the insurance companies to adopt the general basis schedule compiled and filed by the Oklahoma Inspection Bureau as their own particular schedule. In the instant case such a filing by the bureau was under authority of a power of attorney from petitioner. In this manner section 10534, supra, is complied with. Those companies desiring a different rate, prior to the order of July 11, 1936, filed their desired change under authority of section 10535, supra. We cannot interpret section 10537, supra, as preventing the filing of such change or deviation in the rate filed by the Inspection Bureau, as is urged by respondent. To so hold would be to render ineffective section 10535, authorizing such change. The general basis schedule filed by the bureau constitutes nothing more than a filing by each individual company electing to use its service, and we know of no reason why any one company may not supplement such filing by a change or deviation when the resulting rate is not excessive or inadequate.

It will be noted from the facts above stated that this is the interpretation placed upon the act by the Insurance Commissioner in 1919. It is a settled rule of statutory construction that the construction placed on statutory provisions by officers in the discharge of their duty, either at or near the time of their enactment, which has long been acquiesced in, is a just medium for its judicial interpretation. Williams v. Continental Construction Corp. (1934) 168 Okla. 510, 34 P.2d 254. Respondent contends, however, that this construction was not the official act of the board, but only the opinion of one of its members, and is not binding upon this court. The record is silent as to the action of the board, but inasmuch as petitioner proceeded to operate under its reduction plan for some 17 years, it must be assumed that they gave their tacit approval to this construction. In any event, we do not infer that such construction is binding upon this court in every case, but it is highly persuasive. We think it in keeping with the spirit and purpose of the act to give it the interpretation more favorable to the public, bearing in mind that it is in the public interest to keep the rates as low as can be reasonabl' done, consistently with the safety of the insurance companies.

The decisive question would therefore appear to be whether the rate filed by the petitioner at a 25 per cent. reduction from the rate filed for it by the Inspection Bureau is reasonable. But we think the order of the board precludes a determination of this issue in this case for the reason that it appears that the reduction sought by petitioner was denied, not because of its reasonableness, but on the theory that the rates of all the companies must be the same, and that there can be no deviation by any one company, regardless of reasonableness as to it. In this regard we hold that the order of the board is contrary to law.

We have taken the precaution, however, to carefully examine the evidence pertaining to the reasonableness of the rate as filed by petitioner. Inasmuch as the objection is to the proposed reduction in the manual rates, there can be no contention that the rate is excessive or unreasonably high. The only question is whether it is inadequate. We do not think it necessary to burden this opinion with a detailed analysis of the financial condition of petitioner. We think it sufficient to say that the underwriting experience is wholly adequate for a determination of the reasonableness of the proposed rate under which the company has been operating for many years in this state and throughout the country. The record shows that the company is thoroughly solvent and has made a fair underwriting profit under its reduction plan. There appears to be about $6 in assets to every dollar of liability in comparison to around $2 in assets to every dollar of liability as in the case of several of the larger companies. During the five depression years ending with 1935, petitioner made a net underwriting profit of about 4 per cent., during the ten-year period ending with 1935 such profit was about 16 per cent., and during the year 1935 such profit was about 18 per cent. There is evidence that if petitioner is compelled to charge the manual rate, it will be charging on a basis which would net 28 per cent. profit. The record shows that the company

has maintained the plan of paying losses on the day the proof of loss is submitted, and during its 30 years of experience has been subjected to only four actions by policyholders, and in each case the loss was not paid because parties were arrested for arson and the authorities requested that the loss be not paid until the outcome of those cases. We think that, considering the limited nature of the individual risks, the low commission paid to its agents, and its methods with respect to avoidance of the conflagration hazard, petitioner is justified in continuing to charge a rate which is 25 per cent. lower than the manual rate without jeopardizing the safety or soundness of the company. There is nothing in the record which could reasonably compel a contrary view on this issue. We conclude, therefore, that in so far as the order of the board may be said to have been based upon the evidence, such order is contrary to the evidence.

■ Petitioner also contends that the order of July 11, 1936, is contrary to law in that it required the separate companies to become members of the Oklahoma Audit Bureau, a private enterprise. We do not construe the order as being mandatory. It will be noted that the order "respectfully requested" that the companies become members of the audit bureau, and we take this provision to be advisory only.

■ Respondent contends that if petitioners are allowed to deviate from the manual rates filed by the Oklahoma Inspection Bureau the power of the State Insurance Board will be virtually destroyed. Our interpretation of the act as above set out answers this contention. Under the view herein expressed, the board still has complete regulatory and supervisory control over rates submitted by the various insurance companies and authority to determine the reasonableness thereof.

It is ordered that the order of the State Insurance Board of July 11, 1936, be vacated as to petitioner. The order of December 15, 1936, is vacated with directions to approve the request of petitioner for a reduction of 25 per cent. from the manual rates.

OSBORN, C. J., BAYLESS. V. C. J., and WELCH, PHELPS, CORN, GIBSON, and DAVISON, JJ., concur. RILEY, J., absent.