R. T. OLIVER and Philip Mirkin, Petitioners,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD and Roy Parham, Oklahoma Alcoholic Beverage Control Director, Respondents,

Margaret Cox Simpson and Clinton V. Cox, Jr., Intervenors.

No. 39076.

Supreme Court of Oklahoma.

Jan. 24, 1961.

Lloyd G. Larkin, Tulsa, for petitioners.

Wheeler, Wheeler & Wheeler, Tulsa, and Paul Harkey, Norman, Mac Q. Williamson, Atty. Gen., Harry Johnson, Asst. Atty. Gen., for respondents.

Dyer, Powers & Gotcher, Harry L. Dyer, William K. Powers, Deryl L. Gotcher, and Thomas G. Marsh, Tulsa, for intervenors.

WILLIAMS, Chief Justice.

This is an original proceeding upon an application for a writ of prohibition to prevent enforcement of a regulation promulgated by the Oklahoma Alcoholic Beverage Control Board, hereinafter referred to as "The Board", such regulation fixing the minimum markup of retailer's prices on alcoholic beverages sold within the city of Tulsa, Oklahoma.

On March 7, 1960, The Board's director made the following report to The Board:

"Director's Report to The Oklahoma Alcoholic Beverage Control Board of Hearing On Retail Dealers' Petition.

"Gentlemen:

"Pursuant to a petition filed with The Board on the 13th day of January, 1960, I caused Notice of a Public Hearing to be given in the City of Tulsa, Tulsa County, Oklahoma, by publication in the Tulsa Daily Legal News, a legal newspaper published and of general circulation in said City, for a period of ten (10) days prior to February 18, 1960, all as required by Rule No. 11 adopted by The Board, at which hearing on February 18, 1960, numerous witnesses gave testimony under oath, a full, true, and correct transcript of such testimony being hereto attached and made a part hereof.

"After having heard the testimony, studied the transcript thereof and the exhibits introduced, I make the following finding of fact:

" '1. That there exists in the City of Tulsa, Oklahoma, at this time an unstable, chaotic, abnormal and unusual situation insofar as the sale at retail of alcoholic beverages is concerned.

" '2. That bargain prices ranging to below actual cost, loss leader sales, and similar sales promotion schemes exist in many stores to such an extent that the purpose of the Oklahoma

Alcoholic Beverage Control Act to foster temperance, to protect the health and welfare of the people of this State, to discourage any increase in the consumption of alcoholic liquors, and to encourage obedience and respect to the law are thereby defeated.

" '3. That these extremely low prices are available not only to law abiding citizens but to bootleggers, and are thus enabling bootleggers to compete with, and in many instances undersell, licensed retail dealers who use a national average retail markup in the City of Tulsa and in nearby cities and towns, and, at the same time, make substantially the same percentage of profit per bottle as the licensed retailer.' "

\*   \*   \*   \*   \*   \*

"Recommendation

"I therefore, recommend to the Oklahoma Alcoholic Beverage Control Board that the retail price of all alcoholic beverages in the City of Tulsa, Oklahoma, be stabilized by prohibiting any and all retailers from selling by the bottle or in case lot, at a markup of less than fifteen (15%) percent above cost of any and all types of alcoholic beverages sold by any such dealer from and after this date and to remain in effect for a period of ninety (90) days.

"By taking this action, it is my opinion that The Board would thereby help take the bootlegger out of competition with our licensed retail stores; that such action would foster temperance, encourage respect and obedience to the law and prevent undue increase in the sale and consumption of all alcoholic beverages.

"Dated this 7th day of March, 1960.

"/s/ Roy P. Parham,

"Roy P. Parham, Director."

On March 21, 1960, at a special called meeting of the Oklahoma Alcoholic Beverage Control Board held at Bartlesville, Oklahoma, the following action was taken:

"The Board adopted the recommendations of the Director, Roy P. Parham, and approved a 15% markup for the City of Tulsa effective Monday, March 28, 1960, to be in full force and effect for a 90 day period in accordance with the recommendation (Sec. 26, Art. 3)."

Petitioners and the Intervenors, holders of retail licenses and owners of retail liquor stores, in Tulsa, Oklahoma, have applied to this court for a writ of prohibition against The Board to prevent the enforcement of such regulation by The Board.

The amendment to The Oklahoma Constitution adopted April 7, 1959, Art. 27, provides in part as follows:

"There is hereby created The Oklahoma Alcoholic Beverage Control Board, \* \* \*.

"The Board shall have such power and authority to enforce said rules and regulations as may be prescribed by the Legislature."

\*   \*   \*   \*   \*   \*

"Section 3. The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverage, consistent with the provisions of this Amendment. \* \* \*"

It is unnecessary at this time to determine exactly the power vested in The Board by this amendment except to note that the greatest extent of such constitutional authority is to put into effect and operation the acts of the Legislature regulating alcoholic beverages; it implies the exercise of executive or police power. This amendment to the Constitution vests no power in The Board except to administer and effect such laws as may be adopted by the Legislature.

Although the Legislature cannot decrease The Board's constitutional powers, it may increase such authority and delegate additional powers to such board. See 73

C.J.S. Public Administrative Bodies and Procedure § 34.

In vitalizing the above constitutional amendment, the Legislature enacted the "Oklahoma Alcoholic Beverage Control Act", Sess.Laws 1959, Pgs. 141–172, 399, 37 O.S.1959 Supp. §§ 501 to 567, the pertinent provisions of which are as follows:

"Section 3 (37 O.S.1959 Supp. § 503):

"This Act shall be deemed an exercise of the police power of the State of Oklahoma for the protection of the welfare, health, peace, temperance and safety of the people of the State, and all the provisions hereof shall be construed for the accomplishment of that purpose. * * *"

Section 14 (37 O.S.Supp.1959 § 514):

"The Board shall have the following powers and duties:

"1. To supervise, inspect, and regulate every phase of the business of * * * selling, * * * all alcoholic beverages which shall be necessary and proper to carry out the purpose of this Act;

"2. To promulgate rules and regulations, in the manner herein provided, to carry out the purposes of this Act;

"13. To exercise all other powers and duties conferred by this Act, and all powers incidental, convenient or necessary to enable it to administer or carry out the provisions of this Act."

The Board contends that it has full and complete jurisdiction to regulate all phases of the liquor industry where such is necessary for preserving and protecting the health, welfare, temperance and safety of the people of Oklahoma; that such authority includes the power to fix or set minimum retail prices of liquors. As the source of this authority, The Board argues that it is so vested by the Constitution and delegated by the Legislature.

It has been held that, under its police power, a state may prohibit, restrict and regulate every phase of the liquor industry and such regulation may be accomplished by the means of fixing the prices at wholesale and/or retail levels, or vertically, see Supreme Malt Products Co., Inc. v. Alcoholic Beverages Control Commission, 334 Mass. 59, 133 N.E.2d 775.

■ The Board contends that such power to fix prices has been delegated to it by The Oklahoma Legislature in the "Oklahoma Alcoholic Beverage Control Act," supra. We do not agree.

■ The Board contends that the power to "regulate" every phase of the liquor industry within the state vests it with the power to fix prices.

The word "regulate" as defined in 2 Bouv. Law Dict., Rawle's Third Revision means:

"1. To adjust or control by rule, method, or established mode; to direct by rule or restriction; to subject to governing principles or laws."

The term is derived from the Latin word "rego", signifying to guide or direct, through the noun "regula", a rule. The term is one of broad import, has a broad meaning, and is very comprehensive in its scope. There is some diversity of opinion as to what is the meaning of the word, and as to its application to a particular state of facts; some courts giving to the term a somewhat restricted, and others giving to it a liberal construction. It means and implies both government and restriction. The word ordinarily implies not so much the creating or establishment of a new thing, as the arranging in proper order and controlling that which already exists. It has been held to contemplate or imply the continued existence of the subject matter to be regulated; a power of restriction or restraint; and it has been said that the word implies full power over the thing to be regulated and involves the adoption of a rule or guiding principle to be followed. State ex rel. Hollywood Jockey Club v. Stein, 133 Fla. 530, 182 So. 863.

It is unnecessary, in this proceeding, to determine whether the word "regulate", as used in this Act, is to be given the lim-

ited meaning of prescribing a manner or form for conduct or operation, or whether it is used in the broadest sense of meaning to control and direct, as may be determined under the maxims of "ejusdem generis" or "noscitur a sociis", if applicable. In the action upon which this proceeding is based, The Board is attempting to exercise power which might be inferred under the broadest meaning, the power to legislate subordinate rules of law.

No power to fix or set prices of alcoholic liquors at retail is specifically delegated or granted by the legislature in this Act. Such authority, if any exists, must be shown to have been intended to be delegated by the Legislature, such intent to be obtained from the Act itself.

■ The fundamental rule of statutory contruction is to ascertain and, if possible, give effect to the intention or purpose of the Legislature in the statute, to carry out the intention and policy of the Legislature, as expressed in the statute. Adams v. Fry, 204 Okl. 407, 230 P.2d 915; Mid-Continent Pipe Line Co. v. Stephens County Excise Board, Okl., 312 P.2d 883.

■ The Legislative or lawmaking power inherent in the people is reserved to their representatives, the Legislature, by Art. 5 Sec. 1 of the Oklahoma Constitution.

This power, to the extent of making rules and regulations, may be, subject to certain limitations, delegated by the Legislature to administrative boards or officials. Atchley v. Board of Barber Examiners, 208 Okl. 453, 257 P.2d 302.

■ In order that such delegation of authority may be valid within the constitutional provisions, the policy of the law must be declared by the Legislature and a rule of action or framework must be established to guide the agency in the exercise of such powers. In Harris v. State ex rel. Oklahoma Planning and Resources Board, 207 Okl. 589, 251 P.2d 799, we said:

"The Legislature cannot delegate legislative power, but it may delegate authority to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend."

and as stated in Ludwig v. Yancey, Okl., 318 P.2d 450 (Editor's Syllabus),

"The power to determine the law's policy is primarily legislative and cannot be delegated, but the power to make rules of subordinate character to carry out that policy and to apply it to varying conditions, though partaking of legislative character, is in its dominant aspect administrative and delegable."

The test for the delineation between delegable power and non-delegable power is stated generally in 11 Am.Jur.Const.Law § 240:

"One of the most important limitations on the general prohibition of the delegation of legislative power to executive officers consists of a recognition of the right of the legislature under certain circumstances to delegate to executive or administrative officers and boards authority to promulgate rules and regulations. The authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of a law is not an exclusively legislative power, but is rather administrative in its nature. The legislature may not, however, delegate to administrative officers the determination of what the law shall be or what acts are necessary to effectuate the law.

"The policy of the law favors the placing of detailed responsibility in administrative officers. The courts uphold statutes vesting such powers in such officers if it is possible fairly to do so, at least where the powers are merely particular duties or conferring authority upon administrative officers. To be inoperative as a delegation of legislative power, it must clearly appear beyond a reasonable doubt that

the duty or authority so imposed or conferred is one appertaining exclusively to the legislative department and that the delegation of it is not warranted under the provisions of the. Constitution.

"The general principle governing the conditions under which the power to make rules and regulations may be delegated has been stated as follows: A legislature, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. So long as a policy is laid down and a standard is established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities both the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. A distinction is drawn between the more important subjects which must be entirely regulated by the legislature itself and those of less interest as to which general provisions may be made and power given to administrative officers to carry out the details under such general provisions.

"It is difficult to define the line which separates legislative power to make laws from administrative authority to make regulations. Clearly the legislative body must declare the policy of the law and fix some kind of legal principles which are to control in given cases. It must provide an adequate yardstick for the guidance of the executive or administrative body or officer empowered to execute the law, because regulations made by executive officers are valid only as subordinate to a legislative policy sufficiently defined by statute, and must, moreover, be within the framework of such policy. The Supreme Court has laid down certain rules and governing considerations under which the delegation can be scrutinized. In the first place, the legislature may declare its will and, after fixing a primary standard, devolve upon administrative officers the power to fill up the details by prescribing administrative rules and regulations. Thus, if Congress lays down by legislative act an intelligent principle to which the person or body authorized to fix the rate of customs duties on imported merchandise is directed to conform, such legislative action is not a forbidden delegation of legislative power. The Supreme Court has also held that in the determination of what the legislature may do in seeking assistance from administrative officers, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of governmental co-ordination."

In the present case, the Legislature has not in this Act, declared a policy in regard to the control of prices of liquors at retail. The authority to exercise price maintenance control for retail sales is not specifically conferred upon The Board by the Legislative enactment in question. Moreover, the statute itself does not contain any standards, rules of action, or norm for the guidance of The Board in carrying out any expressed or implied policy of the Legislature. The Act is totally barren of any indication as to the intent of the lawmaking body, if any, to vest the power contended for, in whole or in part, in The Board.

The Board contends that section 3 of said act:

"This Act shall be deemed an exercise of the police power of the State of Oklahoma for the protection of the welfare, health, peace, temperance and safety of the people of the State and all the provisions hereof shall be con-

strued for the accomplishment of that purpose."

is a sufficient statement of policy, standards and guide posts under which the Legislature may validly delegate authority to make rules and regulations to carry out the purposes of the Act.

Were we to assume the Legislature intended to vest in The Board the broad and general power to control prices of liquor by promulgation of rules and regulations, such blanket authority, if incidentally conferred (as The Board urges), would be invalid as an unlawful delegation of legislative function without proper standards and guides.

Said Section 3 of the Act is but a restatement of the police power of the state. In Ex parte Tindall, 102 Okl. 192, 229 P. 125, 126, we defined "police power" as:

"The police power is an attribute of sovereignty, inherent in every sovereign state, and not derived from any written Constitution nor vested by grant of any superior power.

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, up-building, and advancement of the public weal and protection of the public interests.

"It is plastic in its nature, and will expand to meet the actual requirements of an advancing civilization and adjust itself to the necessities of moral, sanitary, economic, and political conditions.

"No principle in our system of government will limit the right of government to respond to public needs and protect the public welfare."

In National Bank of Tulsa Building v. Goldsmith, 204 Okl. 45, 226 P.2d 916, at page 921, we said:

" * * * The police power is an attribute of sovereignty or in effect is sovereignty, and the State and its police power cannot be separated. It is fundamental that the Legislature of a state may not part with any of its right to exercise the police power.

" 'As firmly established as the general rule is the corollary that the discretion of the Legislature cannot be parted with any more than the power itself. Thus, the legislative authority cannot redelegate to anyone the ultimate right to determine when, to what extent, and under what circumstances the police power may properly be exercised in any given case.' 11 Am.Jur.Constitutional Law, § 254."

We could not accept The Board's argument without in effect sanctioning a doctrine of legislative abdication or abnegation of its lawmaking powers in favor of an administrative body. This we may not do consistently with the time-honored principles of our constitutional government. The policy of the law, a legislative function, as to the control of prices, would be delegated to discretion of The Board. All matters pertaining to such legislative actions would be determined not by the Legislature but by an administrative board. The Board thus would be making the law, not administering it by implementing details to meet varying conditions. Since the determination of the policy of the law is legislative and non-delegable, The Board's interpretation of its powers as conferred by this Act would be unconstitutional.

The Legislature is presumed to have expressed its intent in the statute, intended what it expressed and nothing more, McCarter v. State, 82 Okl. 78, 198 P. 303. In view of the failure of the Legislature to expressly grant general price fixing powers to The Board and the omission of legal principles, guides, standards or rules of action for exercising such power, we are constrained to hold that the Legislature did not intend to delegate such general price fixing authority to The Board.

Moreover, the above conclusion is confirmed by the Legislative history of this statute. This Act originated as House Bill No. 825 of the 1959 session. As originally introduced, Section 38 thereof contained

limitations on the minimum markups above cost at which both wholesalers and retailers could sell liquors. Prior to final passage and approval by the governor, this section was stricken by amendment. The refusal of the Legislature to exercise its price fixing powers itself, and the failure to expressly grant The Board such powers can result in only the conclusion that a delegation of this power was not intended.

Petitioners, the respondents (The Board) and the intervenors cite numerous cases from other jurisdictions as to the authority vested in similar boards in other states. In view of the foregoing finding that the Legislature did not delegate, expressly or by implication, general price fixing powers to The Board, we deem comment on such cited cases unnecessary.

It is further noted that provision is made by sub-paragraph (22) of section 6 of the Act (37 O.S.1959 Suppl. § 506(22)) that " 'Regulation' means a formal rule of general application promulgated by the Board as herein required." We are of the opinion that a rule requiring a 15% markup of prices by the retailers of only one city is not in compliance with the requirement of the portion of the statute last quoted.

By Section 2 of Art. VII, Oklahoma Constitution, provision is made that " * * * The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law."

■ In the recent case of State ex rel. Moore v. Curry, 208 Okl. 511, 257 P.2d 799, 802, this court said:

"Prohibition is the proper remedy where an inferior tribunal assumes to exercise judicial power not granted by law, or is attempting to make an unauthorized application of judicial force, and the writ will not be withheld because other concurrent remedies exist, it not appearing that such remedies are equally adequate and convenient."

Precisely the same language was used by this court in its syllabus in the early case of Atchison, T. & S. F. Ry. Co. v. Love, 29 Okl. 738, 119 P. 207. In that case was involved a situation wherein the Corporation Commission was seeking to enforce its rule No. 10 of its Order No. 167 to the effect that railroads should give consignees living more than five miles from a railroad station some free time (without collecting demurrage or storage charges) in which to pick up consignments of goods shipped to them, which rule was in conflict with one of the Interstate Commerce Commission to the effect that (as to interstate shipments) "no carrier shall charge * * * different compensation for such transportation of * * * property or for any service in connection therewith * * * than the * * * charges which are specified in the tariff filed and in effect at the time." This court held in that case that the Corporation Commission should be prohibited from enforcing its rule 10 on the ground same was unlawful and an attempted encroachment upon the legislative prerogative of Congress.

■ By its own terms, The Board's order herein involved had expired shortly after the filing of final briefs of the parties and intervenors herein, and technically the question as to the authority of The Board to promulgate and enforce its order so involved becomes moot. Ordinarily, courts will not grant writ of prohibition in situations where the question has become moot, 73 C.J.S. Prohibition § 10d, p. 32 and § 37, p. 118. See Wallace v. McClendon, 144 Okl. 39, 289 P. 354.

However, the courts in situations involving matters of great public interest or affecting the public generally sometimes rule on the questions involved even though the particular question may technically have become moot. See 73 C.J.S. Prohibition § 10d, p. 32, and cases cited under note 74. In Joughin v. Parks, 107 Fla. 833, 143 So. 145, 306, 147 So. 273, after an election contest had become moot, the court ruled on the question of law involved and said, " * * * the questions involved remain and are of great public importance for the guidance of the circuit courts and public officials in future elections * * *."

In State ex rel. Corley v. Pitchford, 38 Okl. 264, 132 P. 913, this court inferred that if practical relief would follow, even an abstract question might be determined. See City of Phoenix v. Lockwood, 76 Ariz. 46, 258 P.2d 431 and authorities therein cited.

We conclude that The Board did not have authority to order the markup of liquor prices as attempted in the situation herein involved.

Writ granted.

WELCH, DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.