Byron GAMBULOS, an individual doing business as Byron's Package Store, Plaintiff in Error,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, composed of J. M. Hewgley, Jr., Sidney P. Upsher, Logan Garnett, Archie Stout, Carl Flick, and Roy P. Parham as Director of the Oklahoma Alcoholic Control Board, Defendants in Error.

No. 41073.

Supreme Court of Oklahoma.
July 26, 1966.

Lythe, Soule & Emery, Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., F. Burck Bailey, Asst. Atty. Gen., for defendants in error.

IRWIN, Justice.

The issue presented in this appeal is whether the Oklahoma Alcoholic Beverage Control Board, herein referred to as Board, had the power and authority to promulgate a certain amendment to its Revised Rules and Regulations. Plaintiff in error, who is engaged in the retail liquor business and will be referred to as plaintiff, sought a writ of prohibition restraining Board from enforcing the order and a declaratory judgment declaring such order to be invalid and of no force and effect.

The trial court, after slightly modifying the amendment, determined Board had the power to promulgate it and that the same was valid. Plaintiff appeals from the order overruling his motion for a new trial.

After the validity of the above amendment, as modified, was upheld by the trial court, Board adopted said amendment as a permanent rule and denominated it as Amendment No. 19. The pertinent provisions of the amendment as modified by the trial court may be summarized as follows: (1) A wholesaler is required to file with

Board a report showing the exact price he is offering his merchandise; (2) In the event a wholesaler desires to raise or lower prices on one or more items, he shall file an amended report but such change in prices shall not be effective until five business days from the date of filing such new price report; (3) On the same date that the new price report is filed, a copy of such report shall be mailed to all licensed liquor wholesalers in the State, and to all licensed retailers to whom such wholesaler has within a sixty day period next preceding such filing sold alcoholic beverages; and (4) Within three business days from the date a new price report is filed, competing wholesalers may file adjusted price schedules to correspond with the new price report and the adjusted price schedule shall become effective at the same time as the new price report.

Sections 10 and 11 of the amendment provide:

*"Section 10.*

"This rule shall not be construed as an attempt to fix, freeze or establish prices of alcoholic beverages at wholesale or retail level, but is deemed necessary and intended for use by this Board and. its employees as a means to give more stability to the wholesale segment of the liquor industry, to better enable it to police against discrimination on the price between retailers and, thus, eliminate as much as possible the present unfair competition, and will enable the Board and its employees to meet its responsibilities under the law. It is an absolute necessity in order to meet these responsibilities, that the Board and its employees be constantly aware of existing wholesale prices at all times.

*"Section 11.*

"The Board finds that imminent peril to the public health, safety and welfare requires adoption of this rule without prior notice for the following reasons:

"(a) That the investments by the various wholesalers represent many millions of dollars, and that their entire life savings are threatened by the present chaotic wholesale business;

"(b) That there has been for several months and is at this time a price war of great proportions being waged which can and will result only in bankruptcy for most of its members unless positive, affirmative measures are taken by this Board to stabilize the liquor industry.

"(c) That, if permitted to continue, monopoly can follow bankruptcy and corruption will follow chaos. Most good citizens will be driven out of business by the ruthless tactics now being employed."

Plaintiff contends that the enactment of such order represents an attempt by Board to fix, freeze and control, directly or by delegation, the wholesale price of liquor and cites Oliver v. Oklahoma Alcoholic Beverage Control Board, Okl., 359 P.2d 183. In that case we held that Board did not have the power or jurisdiction to fix or control the prices of alcoholic liquors at retail.

The Oklahoma Alcoholic Beverage Control Board was created by amendment to the Constitution of Oklahoma, adopted April 7, 1959, Article 27, which in part provides:

"There is hereby created The Oklahoma Alcoholic Beverage Control Board, * *.

"The Board shall have such power and authority to enforce said rules and regulations as may be prescribed by the Legislature."

\* \* \* \* \* \*

"§ 3. The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverage, consistent with the provisions of this Amendment. * * *."

In vitalizing the constitutional amendment, the Legislature enacted the Oklahoma Alcoholic Beverage Control Act

(Title 37 O.S.1961, §§ 501–510) and broad powers and duties were vested in Board. Sec. 514, sub-paragraphs (1), (2), (12) and (13) provide:

"(1) To supervise, inspect, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, distributing, and possessing for the purpose of sale, all alcoholic beverages which shall be necessary and proper to carry out the purposes of this Act;

"(2) To promulgate rules and regulations, in the manner herein provided, to carry out the purposes of this Act;

\* \* \* \* \* \*

"(12) To prescribe by regulations, in addition to those herein required, the kinds of records to be kept and reports to be rendered by licensees, and the information to be shown therein; \* \* \*

"(13) To exercise all other powers and duties conferred by this Act, and all powers incidental, convenient or necessary to enable it to administer or carry out any of the provisions of this Act."

Title 37 O.S.1961, Sec. 536, provides in part as follows:

"(a) (1) It shall be unlawful for any person privileged to sell alcoholic beverages to wholesalers or retailers to discriminate, directly or indirectly, in price between one wholesaler and another wholesaler or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality; or

" \* \* \*.

"(b) The Board is hereby authorized to promulgate rules which are necessary:

"(1) To carry out the purpose of this Section and to prevent its circumvention \* \* \*; .

" \* \* \*."

■ Although Board does not have the power and authority to fix or control the price of alcoholic beverages at retail (Oliver v. Oklahoma Alcoholic Beverage Control Board) it has a specific legislative mandate to prevent discrimination, directly or indirectly.

Roy P. Parham, Director of the Oklahoma Alcoholic Beverage Control Board, testified in part as follows:

" 'We found that on Friday a wholesaler would suddenly drop a price. By the time the smaller wholesaler (sic retailer) would find out about it, Monday morning the price would be back up, and it really resulted in a discrimination against those people that were not informed about the price change on that particular day. A number of days the prices went down and were back up the next day.

" 'The big thing I hoped to accomplish by it was to give all of the retailers an even break so that none of them would be secretly told of a price change to occur next Thursday and suddenly drop a price and they would find out about it next week and that was the big thing I hoped to accomplish so each retailer would have the same information when a price change occurred whether it is upward or downward.

" 'As I said a while ago, the primary aim was to keep all retailers apprised of prices so they couldn't be taken advantage of by any one wholesaler, that is my primary purpose. But, it is also to assist us in policing the whole industry of discrimination state wide.' "

The manager of a wholesaler distributor of alcoholic beverages testified as follows:

"THE COURT: Has your firm ever changed the prices twice in a day?

"A. Not in one day, no sir.

"THE COURT: Twice in two days?

"A. Yes, sir.

"THE COURT: Do you know of any other wholesalers who have changed twice in a day's time?

"A. I know of wholesalers—well, I have been advised of other wholesalers who have, but I would not know specifically.

"THE COURT: Would that make it difficult for some retailers to keep up with the changes?

"A. Makes it virtually impossible for some because on occasions we did change our price on a Thursday night to become effective Friday morning and changed it back to Monday, put it back where it was Thursday. We do not go out of town or we had already shipped out of town and out of town retailers would not have been able to take advantage of the price decrease.

"THE COURT: So, that in such a situation, by the time one retailer heard about the change and came to you, the price may have gone back up again?

"A. That is what did happen, yes sir.

"THE COURT: No further questions."

The trial judge in sustaining the validity of the Amendment presented the problem very aptly as follows:

"'Perhaps I can make an observation and finding here to this date and a formal Journal Entry of Judgment can be prepared and handed down at a later date. I am of the opinion that the spirit of which this rule was adopted is proper and in accordance with the act under which the Board operates. In other words, the law specifically says that no wholesaler shall favor one retailer over another as respects to prices he sells to retailers. The law of this state also is that price fixing is unlawful. I see no reason why this Board cannot have a regulation which prevents discrimination against retailers and at the same time does not result in price fixing. In order to prevent discrimination, all retailers are entitled to a reasonable time within which to become informed as to what prices any wholesaler is selling his merchandise at on any given date * * *.'"

The judgment of the trial court upholding the validity of the amendment, as modified, reads in part as follows:

" * * * the court having heard said evidence and the argument of counsel for the parties, and being fully advised in the premises, finds that Amendment No. 15 to be Revised Rules and Regulations of the Oklahoma Alcoholic Beverage Control Board is not a price fixing regulation but has as its purpose the prevention of price discrimination by wholesalers among retailers such as is prohibited by the Oklahoma Alcoholic Beverage Control Act, at 37 O.S.1961 § 536(a) (1), and that the Oklahoma Alcoholic Beverage Control Board has the authority to implement said provision by regulation by virtue of 37 O.S. 1961 § 514(1), (2), (5), (12) and (13). * * *."

■ In the Oliver case, supra, we invalidated a regulation which provided that the retail price of all alcoholic beverages sold in the City of Tulsa for a period of 90 days should not be less than 15% above the cost of the beverage. In our opinion, such case is not controlling in the instant proceeding. In the present proceeding, the regulation does not fix prices but merely requires that prices fixed and determined by the wholesaler be filed with the Board for a certain length of time before becoming effective.

In our opinion, Board had the power and authority to promulgate the amendment under consideration and the judgment of the trial court is affirmed.

Judgment affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD and BERRY, JJ., concur.

LAVENDER, J., dissents.