Dear Representative Phillips,
¶ 0 This office has received your request for an official Opinion in which you asked, in effect, the following questions:
1. Does the language "when allotting new space" in 61 O.S.1991, § 206(D), which governs guidelines to be used forallocating space for employees of State agencies and governmentalbodies as defined in the Public Building Construction andPlanning Act, apply to situations involving only newconstruction, or is its application more general in nature, toinclude lease renewals, remodeling existing space, movingoffices, or any other similar types of activities?
 2. Under the Public Building Construction and Planning Act,does the Department of Central Services have an ongoingobligation to promulgate space standards consistent withguidelines set by the federal General Services Administration?
 I. ALLOCATING NEW SPACE
¶ 1 The language about which you ask in your first question comes from the Public Building Construction and Planning Act, 61O.S. 1991 and Supp. 1997, §§ 201 through 211 ("the Act"), and reads as follows:
 All state agencies, and all individuals representing such governmental bodies, shall use the federal General Services Administration (GSA) guidelines
when allotting new space for employees until the Office of Public Affairs [now Department of Central Services] can promulgate such space standards consistent with said GSA guidelines.
¶ 2 61 O.S. 1991, § 206[61-206](D) (emphasis added). This statute, effective October 1, 1985, required the use of GSA guidelines only until the Office of Public Affairs, now the Department of Central Services ("DCS"), could promulgate standards consistent with the GSA guidelines. The Office of Public Affairs did promulgate the required guidelines which can be found in OAC580:20-13-1 through 6. Therefore, the guidelines presently applicable are not GSA guidelines, but DCS guidelines.[1]
Your first question asks to which situations those guidelines apply. Because the language in question is part of the Act, we look to the Act in analyzing the law. The Act defines construction as follows:
 "Construction" means the process of planning, acquiring, designing, building, equipping, altering, repairing, improving, or demolishing any structure or appurtenance thereto including facilities, utilities, or other improvements to any real property but not including highways, airports, tunnels, sewers not related to a structure or appurtenance thereto, or dams[.]
61 O.S. 1991, § 202[61-202](2) (emphasis added). The definition is widely inclusive, encompassing most conceivable acts to be done to a structure, appurtenance or improvement to real property, covering the gamut from conception to destruction.
¶ 3 The Act creates within DCS the Construction and Properties Division ("the Division"), and the duties of the Division reflect the nature and purpose of the Act — to deal with "construction of buildings used by state agencies, capital improvements, and utilization of land owned by the State of Oklahoma." 61 O.S.1991, § 204[61-204](A)(1). The Act revolves around construction, as defined therein, and so the mandated guidelines for allocation of new space in Section 206 must be read in the context of that definition.
¶ 4 In viewing the Act as a whole, the phrase "when allotting new space" for employees cannot be limited to "new construction" in the sense of a newly constructed building, but is more generally applied to cover any of the categories which fit within the definition of construction in the Act. While a mere lease renewal as mentioned in your question does not meet the definition of construction, moving offices might or might not, depending on whether it involves any of the processes mentioned in Section 202(2). Whether a particular situation comes within the definition of construction so as to bring it under the Act is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. Supp. 1997, § 18b[74-18b](A)(5). Presently, the leasing and space standards promulgated and used by DCS are applied to all allocations of space for every department of State government, whether in buildings leased or owned by the State, and regardless of whether the space allocation falls under Section 206. OAC 580:20-13-4(a). Therefore, as a practical matter, any distinction suggested by your question has no effect under current DCS rules.
 II. USE OF FEDERAL GENERAL SERVICES ADMINISTRATION GUIDELINES
¶ 5 Section 206 of the Act does not require that DCS space allocation standards continuously comply with GSA guidelines. The GSA guidelines in effect at the time Section 206 was passed were the standards to be used until the DCS standards consistent with those guidelines were promulgated. The Legislature did not adopt the GSA guidelines and all subsequent revisions thereof, nor did it require in Section 206 or elsewhere an ongoing compliance with GSA guidelines. The statute was enacted in contemplation of the GSA guidelines in effect at the time of its enactment. The clearly expressed language of the statute provides that GSA guidelines were an interim standard, not a permanent one.
¶ 6 Space allocation for State agencies has far-reaching fiscal implications. Each allotted square foot affects the amount of dollars to be expended by an agency. "The purpose of the space allocation standards is to present a uniform and consistent method of evaluation of the amount of space required to support a specific program or agency in state owned, non-state owned space, and all real property to be purchased or lease-purchased by the State." OAC 580:20-13-4(a). "The State uses Net Useable Square Feet as the standard method of measurement." OAC580:20-13-5(b)(6). Net useable square feet is the space in non-state owned facilities for which the State will pay a square foot rate, and is defined to exclude, among other things, common-area space accessible to and/or utilized by entities other than the State, stairwells and bearing partitions, elevator and escalator shafts, fixed or common use corridors, etc. OAC580:20-13-2. In the event GSA guidelines provided more generous standards, and those standards were adopted by the State, the State would incur a significant increase in expenses.
¶ 7 The power to determine policy of law is primarily legislative and cannot be delegated. State v. Parham,412 P.2d 142, 150 (Okla. 1966). Nevertheless, the power of the Legislature to make laws may be delegated to administrative boards or officials to the extent of making rules and regulations, subject to certain limitations. Oliver v. Oklahoma Alcoholic BeverageControl Board, 359 P.2d 183, 187 (Okla. 1961). Standards for such delegation must expressly appear in the legislative enactment in order to avoid an unconstitutional delegation of legislative power. Democratic Party of Oklahoma v. Estep,652 P.2d 271, 278 (Okla. 1982).
¶ 8 Section 206(D) of the Act required State agencies to use GSA guidelines for allocating new space only until standards consistent with those guidelines could be promulgated by DCS. It does not require an ongoing conformity with GSA guidelines.
¶ 9 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The language "when allotting new space" in 61 O.S. 1991,§ 206(D), which governs guidelines to be used for allocatingspace for employees of State agencies and governmental bodies asdefined in the Public Building Construction and Planning Act,61 O.S. 1991 and Supp. 1997, §§ 201 through 211, applies toany activity which fits within the definition of "construction"in 61 O.S. 1991, § 202(2). Whether a particular activityconstitutes construction is a question of fact which cannot beanswered in an Attorney General Opinion. 74 O.S. Supp. 1997, §18b(A)(5).
 2. The Public Building and Construction Act at 61 O.S. 1991,§ 206(D) of the Oklahoma Statutes does not create an ongoingobligation on the part of the Department of Central Services topromulgate space standards consistent with the federal GeneralServices Administration guidelines. The federal guidelines werean interim standard to be used by State agencies in 1985 untilState standards consistent with those 1985 federal guidelineswere promulgated.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GAY ABSTON TUDOR ASSISTANT ATTORNEY GENERAL
[1] In addition to the duty of DCS to promulgate space allotment guidelines under the Act, DCS has been given "full and complete authority to designate quarters for every department of state government, and to determine what space shall be allotted."74 O.S. Supp. 1997, § 94[74-94].