COMMITTEE OF OIL REFINERS OF OKLAHOMA v. STATE INSURANCE BOARD et al.

No. 30189. Jan. 19, 1943.

Rehearing Denied Feb. 16, 1943.

*133 P. 2d 885.*

Breck Moss, Mont R. Powell, and L. D. Hoyt, all of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for respondent.

HURST, J. The Committee of Oil Refiners of Oklahoma, an organization of petroleum refiners which employ in the manufacture of gasoline in this state the Dubbs Cracking Process, under licenses from Universal Oil Products Company, the owners of such process, filed with the State Insurance Board an "Application for Order Requiring a Revision of Insurance Schedule for Establishing Fire Insurance Rates on Cracking Stills." A hearing on such application was held by the State Insurance Board beginning August 8, 1939, and ending August 21, 1939. The Board denied the application, and the Committee appeals.

The ground of the application is that Universal Oil Products Company has perfected, and the refiners composing the committee are using, a system of expert inspection of Dubbs cracking units which the committee claims is greatly superior to the inspection ordinarily given to cracking units in refineries which do not use the Dubbs system; that said inspection, by revealing weaknesses in the various parts of the cracking units due to operating wear and stress which would not be revealed by the inspection in refineries not using the Universal inspection, enables the members of the committee to keep their cracking units in such condition as to greatly reduce the hazards of operation, and the loss by fire resulting therefrom, and entitles them to a lower premium rate than is applicable to cracking units generally. The Oklahoma Inspection Bureau, the rate-making body of the various fire insurance companies operating in the state, opposed the application.

Two questions are presented for determination: (1) Did the State Insurance Board have jurisdiction to pass upon the application? (2) Is the order denying the application contrary to the evidence, or not supported thereby?

1. The Insurance Board argues that it has no jurisdiction to pass upon the question presented for the reason that insurance is not written upon the cracking units, but upon the refinery as a whole, and that the rate on cracking units specified in the schedule filed is only a detail of the schedule with which it is not concerned.

In American Druggists Fire Ins. Co. of Cincinnati v. State Insurance Board, 184 Okla. 66, 84 P. 2d 614, we set out and discussed the applicable statutes (36 O. S. 1941 §§ 131-134), and concluded that by the authority given the State Insurance Board to direct any insurance company "to file a higher or lower rate" (sec. 134) the board has the implied power to fix rates. And it necessarily follows that the power to fix rates includes the right to take into consideration all the elements and factors that properly have a bearing on the rate to be established.

The schedule of rates for refineries is in the record. Therefrom it appears that various parts of the refinery are rated differently, apparently with regard to the fire hazard of each, and that certain credits are given where buildings are of a certain type of construction, or certain protective appliances are installed and in use. The rate for the entire refinery is the composite of

all such rates shown in the schedule, less the various credits. Therefore, if each portion is correctly rated according to the fire hazard thereof, it seems clear that a substantial reduction of the rate on the cracking units would result in a reduction of the refinery rates. An excessive rate on the cracking units might result in an excessive rate on the refinery, or it might be the result of an incorrect rating of the fire hazard of the various parts of the refinery in that the cracking units were rated too high, and other parts of the refinery too low. The State Insurance Board has jurisdiction, under the statutes and decision above referred to, to hear evidence upon this question, and to determine whether the scheduled rate for cracking units was excessive, and if so, whether the rate on the entire refinery was thereby rendered excessive. If it found that the cracking unit rate was too high, and that the refinery rate was thereby rendered excessive, it was its duty to direct the insurance company to file a lower rate, as required by section 134.

2. The Committee of Oil Refiners contends that the order of the State Insurance Board is not supported by the facts developed at the hearing. We have examined the record, and do not agree with the contention. The extracting of gasoline from crude petroleum by cracking process necessitates the use of a cracking unit composed of complex and intricate masses of tubes, coils, pumps, towers, and other appliances. It involves the subjection of the petroleum to extreme heat and extreme pressure while passing through such unit. This heat and pressure, combined with the chemical effect of certain elements contained in crude petroleum, is very detrimental to the pipes, tubes, and other appliances and equipment composing the unit. The discovery and replacement of such portions of the equipment as are thereby rendered unfit to withstand the heat and pressure to which they are subjected is essential to the safe operation of the cracking units. This necessitates frequent inspection of the various parts of the unit. The evidence of the relative merits of the different types of inspection was conflicting, the witnesses for the committee testifying to the superiority of the inspection by the Universal Oil Products Company, and the witnesses produced by the Oklahoma Inspection Bureau testifying that the self-inspection system employed by other refineries was equally good, if not better. These witnesses also testified that the other manufacturers of cracking units furnished advice and assistance to their licensees in the inspection of the units. It was admitted that the larger refineries are self-inspected.

The committee introduced in evidence certain compilations showing the percentage of losses on Dubbs cracking units by fire, in relation to total fire losses in the United States. This compilation was made for Universal Oil Products Company by the witness Fischer from information furnished him by that company, which he testified the company obtained from various refineries using Dubbs cracking units. Each compilation showed for each refinery, for each year, the insured value, rate on cracking units, amount of premium paid, and amount of loss. The refineries were not identified by name or otherwise. The amount of premium shown was in some instances computed from the valuation and rate by Fischer. The losses were those sustained only on cracking units. These compilations showed that on all refineries in the United States using the Universal inspection service the loss ratio on cracking units for the seven-year period ending with 1936 was approximately 15 per cent of the premiums paid thereon, and the loss ratio on cracking units in Oklahoma refineries using the Universal inspection service approximately 6.69 per cent of the premiums paid. The loss ratio on all property of every kind in the United States destroyed by fire for the nine-year period ending with 1937 was shown as 46.507 per cent. Fischer testified that the figures furnished him were not verified; that he did not know whether the values given were those shown in the insurance policies of the

various refineries, or that the insurance premiums shown, if given by the refineries, were computed upon the valuations shown. If the insurance rate was not furnished, he estimated it. He did not know just what was included in the valuations given or losses shown, or whether either was correct. He made no allowance for shutdown units, which he admitted would carry a different rate, or for property appurtenant to and used in connection with the cracking units, but which carried a much lower rate. He refused to produce the information from which the compilations were made, claiming that it was confidential. He could not or would not identify by name any refinery whose valuation, premium rate, and losses were shown in his compilations. The representatives of three of the Oklahoma refineries which he claimed were included in the Oklahoma compilation were unable to identify any of the figures shown therein as figures relating to their refineries. The evidence did not show the fire losses on cracking units over the same period in plants not using the Dubbs process, or not employing the Universal inspection service, nor did it show refinery losses from fires in the same period, either as a whole or as to refineries using the Universal inspection service. The lack of any evidence of the correctness of the figures shown in these compilations, or of proof that they showed valuations and premiums actually contained in or paid upon insurance policies carried on the refineries from which the figures were obtained, as well as the lack of evidence showing just what property was included in the valuations, rendered the compilations of little, if any, value as evidence. The contention that thereby the losses on cracking units in refineries using the Universal inspection were shown to be relatively smaller than those in refineries which did not use such inspection, and that the Insurance Board should have so found, is untenable. Nor could the board find from such evidence that the loss ratio shown therein was the actual loss ratio on cracking units in the refineries included in the compilations. Such a finding would have been based upon speculation. And, even if we assume that the ratio of loss shown by the compilations is correct, there is no evidence that the total losses of the refineries embraced or included therein were below the general average of refinery losses, so as to entitle the members of the committee to demand a rate lower than that of other refineries in the state.

The evidence did not establish that the rate on the refineries of the members of the committee was excessive, nor did it sufficiently show that the inspection service furnished by Universal Oil Products to its licensees entitled the refineries using it to a credit on cracking unit rates greater than should be allowed to refineries using other systems of inspection.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur. OSBORN, J., absent.