463 P.2d 693 (1970)
OKLAHOMA STATE AFL-CIO, Ray E. Peterson and Dale J. Briggs, Plaintiffs in Error,
v.
STATE BOARD FOR PROPERTY AND CASUALTY RATES, Defendants in Error.
OKLAHOMA TRIAL LAWYERS ASSOCIATION, Kenneth R. Nance and the AFL-CIO, Petitioners,
v.
STATE BOARD FOR PROPERTY AND CASUALTY RATES, Respondent.
Ethyl K. BLEVINS, Jimmy D. Pipkins, Mora Robert Jackson, Don W. Kelly and Bill A. Roderick, Petitioners,
v.
STATE BOARD FOR PROPERTY AND CASUALTY RATES, Respondent.
Nos. 41786, 43662, 43780.
Supreme Court of Oklahoma.
January 6, 1970.
Saied & Porter, Oklahoma City, for plaintiffs in error, Oklahoma State AFLCIO.
*694 Berringer, Briggs & Barnes, Paul W. Brightmire, Tulsa, for plaintiffs in error, Dale J. Briggs and Ray E. Peterson.
Fuller, Davis, McPherson & Buckingham, G.M. Fuller, Oklahoma City, of Counsel, John N. Reid, Watters & Donovan, New York City, for amicus curiae for National Bureau of Casualty Underwriters.
Richard K. Race, Oklahoma City, for defendants in error.
Tom Wakely, Dick & Dewbre, Oklahoma City, Dale J. Briggs, Berringer & Briggs, Tulsa, for petitioners Oklahoma Trial Lawyers Assn. and Kenneth R. Nance.
Heber Finch, Finch & Finch, Sapulpa, for petitioner Oklahoma State AFL-CIO.
Fuller, Davis, Henderson & Tubb, G.M. Fuller, Oklahoma City, for amicus curiae, Insurance Rating Bd.
G.T. Blankenship, Atty. Gen., Carl Engling, Asst. Atty. Gen., for respondent.
Tom Wakely, Dick & Dewbre, Oklahoma City, for petitioners.
Walter D. Hanson, Oklahoma City, for amicus curiae.
JACKSON, Justice.
Appeals are pending in this court in three cases from orders of the State Board for Property and Casualty Rates granting increases in insurance rates. In Oklahoma State AFL-CIO, Ray E. Peterson and Dale J. Briggs v. State Board for Property and Casualty Rates, No. 41,786, no application was made to this court pursuant to 36 O.S. 1961, Sec. 910, for an order staying the rate increase. In Oklahoma Trial Lawyers Association, Kenneth R. Nance and the AFL-CIO vs. State Board for Property and Casualty Rates, No. 43,662, also an automobile insurance rate case, an application was made for an order staying the effectiveness of the rate increase and an order was entered on July 28, 1969, staying the effectiveness of the rate increase until the further order of this court. In Ethyl K. Blevins, Jimmy D. Pipkins, Mrs. Robert Jackson, Don W. Kelly, and Bill A. Roderick vs. State Board for Property and Casualty Rates, No. 43,780, homeowners' property insurance was involved. In that case a rate increase was approved, the rates became effective, and an application is pending before this court to stay the effectiveness of the rate increase pending the submission of briefs and the final decision of this court.
In all three cases the basic question presented is whether income from the investment of unearned premium reserve and loss reserve should be considered by the Board in the establishment of insurance rates. Statutory provisions respecting these reserves are found in 36 O.S. 1961, Sections 1505(2) and (4), and 1506.
On September 12, 1969, this court entered an order in Case No. 43,662, supra, wherein we expressed the tentative view that the Oklahoma Trial Lawyers Association and AFL-CIO have "standing" to represent their members in connection with the proposed rate increase, and that the Board should have given due consideration to income from the investment of unearned premium reserve and loss reserve.
After a careful consideration of the arguments made in the briefs and research, our views are no longer tentative.
On the question of petitioners' "standing" to represent their clients in cases numbered 41,786 and 43,662, supra, we have considered Oklahoma's Financial Responsibility Act, 47 O.S. 1961, Secs. 7-101, et seq., as amended in 1965, and the consequences that may flow from a failure to comply with the Act, and the number of persons who hold membership in the Trial Lawyers Association and AFL-CIO in Oklahoma, together with the number of insurance companies affected by the rate order, and have concluded that judicial notice may be taken that some of the members of these associations carry insurance with companies which seek the rate increases, or will be applicants for insurance coverage by such companies. 29 Am.Jur.2d Evidence §§ 14-21, both inclusive, and Section 121; 31 C.J.S. Evidence §§ 9 and 30. On the question of "standing" see *695 N.A.A.C.P. v. Button (1963), 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; Brotherhood of R. Trainmen v. Virginia ex rel. Virginia State Bar (1964), 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89; United Mine Workers of America, Dist. 12 v. Illinois St. Bar Ass'n (1967), 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426.
On the question of whether the Board should have given due consideration to income from the investment of unearned premium reserve and loss reserve in approving casualty rates 36 O.S. 1961, Sec. 902, subd. B provides that "Due consideration shall be given * * * to a reasonable margin for underwriting profit and contingencies * * * and to all other relevant factors * * *." Identical language is found in 36 O.S. 1961, Sec. 1003, subd. A, par. 3 regarding homeowners' property insurance rates. Our conclusion that income from unearned premium and loss reserves is "relevant" is based upon the fact that under the statutes these reserves are actually in the nature of trust funds held by the insurer for the benefit of the policyholders. It would seem to follow that investment income from these reserves should inure to the benefit of the policyholder to the extent of being a relevant factor in the rate making process.
In 36 O.S. 1961, Secs. 902, subd. A (casualty) and 1001 (property), it is provided that rates for insurance shall not be excessive, inadequate, or unfairly discriminatory. Of necessity it must have been the intention of the Legislature that the people must be protected against excessive insurance rates. At the same time the Legislature made it manifestly clear that rates should not be so inadequate as to destroy the ability of insurance companies to meet their financial obligations to their customers, the insured. If rates are too high speedy action should be taken to protect the policyholder. If rates are too low speedy action should be taken to protect the insurance company against bankruptcy and preserve its ability to meet its financial commitments to its policyholders. Thus "time is of the essence" to establish rates that will protect the policyholders as well as the insurance companies.
As heretofore pointed out we entered an order on July 28, 1969, in 43,662, supra, staying the effectiveness of the Board's order in that case. The records and briefs in that case have not been filed with this court and the case is not at issue for disposition on its merits.
In case No. 43,780 a rate increase was authorized for the companies appearing therein and it is our understanding that the rate increase has been effective since the effective date of the Board's order, Oct. 28, 1969. As heretofore noticed, an application is pending before this court to stay the effectiveness of the rate increase. The briefs have not been filed and that case is not at issue. We do notice from the briefs and pleadings filed in connection with the application for stay that the insurance companies tendered some exhibits and evidence as to their earnings from the investment of unearned premium. However, the protestants and petitioners in that case were not afforded ample time to examine the exhibits and cross examine company witnesses.
Considering the foregoing, it is apparent that the Board in its former rate orders either did not give due consideration to income from the investment of unearned premium and loss reserves, as we now hold it should have done, or did not give protestants an adequate opportunity to cross axamine and present their protest.
Considering the importance of a solution to the basic question presented to automobile and homeowners, as well as to the insurance companies involved, and the establishment of rates in accordance with the statutes, we have concluded that appellate procedures are not sufficiently adequate to afford timely relief to any of the parties involved in these cases and that the harm being done may be mitigated if we exercise superintending control under the provisions of Article 7, Section 4, Oklahoma Constitution, and direct the *696 State Board for Property and Casualty Rates to take appropriate action. Sheegog v. Incorporated Town of Lindsay (1927), 127 Okl. 39, 259 P. 551.
In 36 O.S. 1961, Sec. 903, subd. B (Casualty), the Legislature has provided:
"Whenever it shall be made to appear to the Board, either from its own information or from complaint of any party alleging to be aggrieved thereby, that there are reasonable grounds to believe that the rates on any or on all risks or classes of risks or kinds of insurance within the scope of this law are not in accordance with the terms of this law, it shall be the duty, and it shall have the full power and authority to investigate and determine whether or not any or all of such rates meet the requisites of this article."
It now being apparent the rates established in Cases numbered 41,786 and 43,662, were not in accordance with the terms of the statutory law, it is ordered that the Board conduct hearings under the provisions of Section 903, supra, after giving appropriate notice to the litigants therein, and establish rates (prospectively) for the insurance companies involved therein that will not be excessive or inadequate. Income from the investment of unearned premium and loss reserves must be considered to reduce the premium rates to the policyholders. Evidence should be heard as to what will constitute a reasonable margin for underwriting profit and contingencies, and all relevant factors. The burden of proof rests upon the insurer or rating bureau. Sec. 903, subd. C.
The order of this court dated July 28, 1969, in Case No. 43,662 wherein we stayed the effectiveness of the Board's order dated July 3, 1969, will remain in effect until superseded by the order of the Board after it has conducted its hearing under the provisions of Sec. 903, supra.
In Case No. 43,780 the application of the protesting petitioners for an order of this court to stay the effectiveness of the rate increase pending final decision of this court is denied. The Board's order therein will remain in effect until superseded by the order of the Board after hearings hereinafter directed.
In Case No. 43,780 the income from the investment of unearned premium and loss reserves must be considered to establish the premium rates to the policyholders. Evidence should be heard as to what will constitute a reasonable margin for underwriting profit and contingencies all as set forth in 36 O.S. 1961, Sec. 1003. The filings heretofore made and the hearings heretofore conducted by the Board in connection therewith in Case No. 43,780 do not fully comply with the provisions of 36 O.S. 1961, Section 1004, and it is necessary that a new hearing be conducted under the provisions of 36 O.S. 1961, Sec. 1005, subd. C to establish a rate that will comply with Section 1004, supra, and the views herein expressed. The burdens of proof will be upon the insured or rating bureau to establish and justify a proper rate within the statutes.
In all three cases now pending before this court, Nos. 41,786, 43,662, and 43,780, the Board without unnecessary delay will conduct hearings and establish rates in accordance with the statutes taking into consideration income from the investment of unearned premium reserves and loss reserves in establishing proper insurance rates.
All the Justices concur.