**INSURANCE SERVICES OFFICE,**
Appellant,

v.

**The STATE BOARD FOR PROPERTY AND CASUALTY RATES OF OKLA-HOMA, Appellee.**

No. 47474.

Supreme Court of Oklahoma.

Jan. 14, 1975.

W. R. Wallace, Jr., Rainey, Welch, Wallace, Ross & Cooper, Oklahoma City, for appellant.

Paul Ferguson, Stan Chatman, James W. Swank, Jr., Oklahoma State Ins. Commission, Oklahoma City, for appellee.

LAVENDER, Justice:

The appellant, Insurance Services Office (ISO), is a properly licensed rating organization and authorized to file insurance rates for insurers writing automobile insurance in Oklahoma. It represents some 225 companies. The appellee is the State Board for Property and Casualty Rates of Oklahoma (Board). This is an appeal of its order dated April 9, 1974, issued against the appellant.

On January 3, 1974, the Board addressed a communication to "All Insurance companies writing automobile insurance in Oklahoma." It read:

"You are hereby requested to reduce all automobile insurance premiums and rates ten percent (10%) effective February 1, 1974.

This request is due to reduction in speed limits and shortage of fuel.

Please advise by mail or telegram that you will comply with this request or show cause."

Subsequent thereto, the Board gave notice to the same insurers (writers of automobile insurance) of an investigative hearing the Board would hold on January 29, 1974. The notice advised the purpose of the meeting was "to determine, for those companies electing to show cause, as to why automobile rates should not be reduced, a procedure for filing of experience exhibits and other relevant data and for the setting of individual hearing on the

matter." ISO was represented at the hearing. The Board's minutes dated January 29, 1974, calls the hearing a special meeting regarding 10% automobile rate reduction request—energy crises. A resolution was adopted by the Board that individual hearings be set for those insurers that had not filed for the 10% automobile rate reduction.

Under date of February 15, 1974, ISO was given notice of hearing for March 19, 1974, "for the purpose of determining whether or not the Board should issue an order withdrawing its approval, disapproving *and/or changing* the automobile insurance rates filed by the Insurance Service Office." In the notice ISO was directed to file with the Board at the earliest possible date prior to the hearing an exhibit in the nature of an automobile rate filing including some twelve items.

At the March 19, 1974, hearing, testimony was taken and much documentary evidence introduced by both the Board and ISO.

From the March 19th hearing came the Board's order of April 9, 1974. The order recites the purpose of the hearing was to make a determination if ISO's rates were excessive in violation of 36 O.S.1971, § 902, subd. A and, if so, to comply with 36 O.S.1971, § 903, subd. C. It details some 23 findings of fact and 22 conclusions of law. In the order portion the Board orders ISO to reduce its automobile insurance rates approved February 11, 1970, then in effect, by ten percent (10%) with the effective date the same date as the order. This appeal is from that order.

We hold the Board does not have authority to order that reduction.

The controlling statutes are certain subsections of 36 O.S.1971, §§ 902 and 903, as amended.[1] The regulation of rates used by

---

1. Portions of 36 O.S.1971, §§ 902 and 903 are as follows: (§ 903 was amended by Laws 1971, c. 125, § 2 by adding a subdivision I) relating to open meetings of the Board which is not an issue in the instant case.)

"§ 902. Restrictions on rates; when effective; deviation from filed rate

A. Rates for insurance shall not be excessive * * *.

No rate shall be held to be excessive unless (1) such rate is unreasonably high for the insurance provided; or (2) a reasonable degree of competition does not exist in the area with respect to the classification to

casualty insurance companies became the function of the State Insurance Board in 1949. That board's authority as to rates in the field of casualty insurance including all forms of motor vehicle insurance resulted from the passage of a rating act, commonly referred to as the "Casualty Rating Act."[2] That act was codified in the official Oklahoma Statutes 1951 as 36 O.S. 1951, §§ 881–891.

The Casualty Rating Act amended Section 131, 36 O.S.1941 to give the State Insurance Board[3] authority over casualty insurance rates. At that time, the Insurance Board's general duties were defined under 36 O.S.1941, §§ 131–151. The "Casualty

which such rate is applicable and such rate is unreasonably high for the insurance provided.

 * * * * *

B. Due consideration shall be given to past and prospective loss experience within and outside the state, to physical hazards, to safety and loss prevention factors, to underwriting practice and judgment, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies; to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members, or subscribers; to past and prospective expenses both countrywide and those specifically applicable to the state; to whether classification rates exist generally for the risks under consideration; to the rarity or peculiar characteristics of the risks; and to all other relevant factors within and outside the state.

 * * * * *

G. Subject to the exceptions specified in the second paragraph of this subsection G any filing made in accordance with the provisions of section 903 of this article shall be on file for a waiting period of thirty (30) days before it becomes effective, which period may be extended by the Board for an additional period not to exceed fifteen (15) days if it gives written notice within such waiting period to the insurer or rating organization which made the filing that it needs such additional time for the consideration of such filing. Upon written application by such insurer or rating organization, the Board may authorize a filing which it has reviewed to become effective before the expiration of the waiting period or any extension thereof. A filing shall be deemed to meet the requirements of this article unless disapproved by the Board within the waiting period or any extension thereof. * * * Rates approved as herein provided shall thereafter remain in effect unless and until changed by the Board.

 * * *.

 * * * * *

§ 903. Filing rates; investigations and hearings

A. Every insurer shall file with the Board, either directly or through a licensed rating organization of which it is a member or subscriber, all rates and rating plans and classifications which it uses or proposes to use in this state.

B. Whenever it shall be made to appear to the Board, either from its own information or from complaint of any party alleging to be aggrieved thereby, that there are reasonable grounds to believe that the rates on any or on all risks or classes of risks or kinds of insurance within the scope of this law are not in accordance with the terms of this law, it shall be the duty, and it shall have the full power and authority to investigate and determine whether or not any or all of such rates meet the requisites of this article.

C. After such an investigation of any such rates, the Board shall, before ordering the discontinuance of the use of such rates, hold a hearing upon not less than ten (10) days written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which filed such rates, provided the Board need not hold such hearing in the event it is advised by every such insurer and rating organization that they do not desire such hearing. If after such hearing the Board determines that any or all of such rates are not in compliance with the provisions of this article, it shall issue an order, stating when, within a reasonable period thereafter, such rate or rates shall be deemed no longer in effect. Pending such investigation by the Board, rates shall be deemed to have been made in accordance with the terms of this article; provided, however, in the event a hearing is held for the purpose of determining whether a filing complies with the provisions of this article burden of proof shall rest on the insurer or rating organization which made such filing.

 * * * * *

2. Session Laws of Oklahoma, 1949, p. 266, HB No. 359.

3. In 1965 by amendment State Insurance Board became the State Board for Property and Casualty Rates. By § 911, Art. 9, as amended, Rates and Rating Organizations —Casualty is administered by that Board.

Rating Act." supra, expressly excluded some of these sections from application to it. Section 134 was not so excluded. It provided:

> "§ 134. Control of rates When said board shall determine that any rate made by such insurance company in this state is excessive or unreasonably high, or that said rate is inadequate to the safety or soundness of the company granting the same, it is authorized to direct said company to file a higher or lower rate, commensurate with the risk, but in every case the rate shall be reasonable. Laws 1915, Ch. 174, § 4."

This court held in American Druggist Fire Ins. Co. v. State Ins. Board, 184 Okl. 66, 84 P.2d 614 (1938) there was no specific provision authorizing the board to fix or approve rates but under § 134 the authority "to direct said company to file a higher or lower rate" gave the board the right to approve or fix rates. This American Druggist Fire Insurance opinion is cited in Committee of Oil Refiners of Oklahoma v. State Insurance Board, 192 Okl. 92, 133 P. 2d 885, 886 (1943) as giving the State Insurance Board the implied power to fix rates under its statutory authority at § 134, supra, to direct any insurance company "to file a higher or lower rate." Section 134 was not carried over and is not found in the Insurance Code adopted in 1957. It is not now in effect.

The "Casualty Rating Act" as originally adopted allowed rates to become effective immediately upon filing with the Board and were to remain in effect until changed by the company or rating organization making them, or their further use was prohibited by order of the Board in accordance with provision of Section 2(g) of the act (36 O.S.1951, § 882(g)). In 1953 this subsection was amended. Any filing was to be approved or disapproved by the insurance board. The filing was not effective until approved by the Board. With this change, the amendment also provided:

> "Rates approved as herein provided shall thereafter remain in effect unless and until changed by the Insurance Board."

"Insurance Board" was in lieu of "the company or rating organizations making the filing" as originally passed. This language was carried over in the Insurance Code as a portion of subsection G, § 902.

Subsection G, § 902 of the Insurance Code when adopted in 1957 was considered new material for the "Casualty Rating Act." It was amended in the Code to conform with provisions of the Fire Rating Act (36 O.S.1971, § 1004, subd. D). Subsection G, supra, now in effect provides for any rate schedule to be on file for a waiting period of thirty (30) days before it becomes effective. The Board may extend the waiting period for an additional period not to exceed fifteen (15) days. A filing is deemed to meet the requirements of the act unless disapproved by the Board within the waiting period. The Board has the authority to disapprove.

■ The Insurance Code no longer gave to the Board the authority to direct any insurance company "to file a higher or lower rate" (36 O.S.1951, § 134). Without that authority the Board did not have the implied power to approve or fix rates. We do not believe the language presently found in § 902, subd. G, supra, "Rates approved as herein provided (automatic after the waiting period unless disapproved) shall thereafter remain in effect unless and until changed by the Board" establishes the implied power to fix rates as held heretofore under § 134. The failure to reenact Section 134 which this court had held impliedly authorized the Board to fix rates reenforces our conclusion concerning the quoted portion of § 902, subd. G above.

As relating to rates, Sections 902 and 903, supra, must be read and applied together. Every insurer, directly or through a rating organization, must file all rates and rating plans with the Board (§ 903, subd. A). The filing becomes effective after a waiting period of thirty days (may

be extended for not more than an additional fifteen days) unless disapproved by the Board within the waiting period and upon a proper determination of non-compliance of the rates with the Act (§ 902, subd. G). At any time it appears to the Board, either on its own information or from complaint of any party alleging to be aggrieved thereby, there are reasonable grounds to believe the rates are not within the terms of the Act, the Board may investigate and determine if the rates meet the requisites of the Act (§ 903, subd. B). After such an investigation, the Board, before ordering the discontinuance of the filed rates, must hold a hearing, after prescribed notice, and then determine if the rates are or are not in compliance with the Act (§ 903, subd. C). If the rates are not determined to be in compliance with the Act, the Board shall issue an order, stating when, within a reasonable period thereafter, such rate or rates shall be deemed no longer in effect (§ 903, subd. C). At the determination hearing, the burden of proof as to compliance rests with the insurer or rating organization making the filing.

■■ We hold under the Casualty Rating Act (36 O.S.1971, §§ 901–911, as amended), relating to rates to be charged for the kind of insurance therein covered, the Board has authority to disapprove a filing during the waiting period if found not to meet the requirements of the Act. Whenever it is made to appear to the Board there are reasonable grounds to believe the rates are not in accordance with the terms of the Act, it has full power to investigate and to make that determination. Then the Board's only authority is to order the discontinuance of the use of a rate, stating when, within a reasonable period thereafter, such rate or rates shall no longer be in effect. This can be done only after an investigation, a hearing with required notice, and a determination by the Board the rates are not in compliance with the provisions of the Article 9 of Title 36 of Oklahoma Statutes 1971, as amended.

(The Casualty Rating Act now in effect, 36 O.S.1971, §§ 901–911, as amended.)

The Board does not have rate making or rate fixing powers and authority as to casualty insurance and all forms of vehicle insurance on risks or operations in this state. The Board does have authority to disapprove, during the waiting period, a filing; or order the discontinuance of the use of a rate in effect after investigation, proper hearing with notice and a determination the rate is not in accordance with the terms of the Act.

Oliver v. Oklahoma Alcoholic Beverage Control Board, Okl., 359 P.2d 183 (1961), cited by the Board, is not in point. In that case this court denied the regulatory board involved the power to fix the retail prices of alcoholic beverages. We stated that it was not necessary to decide whether to "strictly" construe the statute which delegated the powers to the Board involved or to take the "conservative" view of the statute. We observed that there were no legislative "guidelines" by which the Board could arrive at a price for which such beverages should be sold at retail. That fact plus the fact that the legislation did not specifically authorize the Board involved to fix retail prices was sufficient for the purposes of that opinion to deny that such authority existed. The Oliver case does, however, contain a detailed discussion of the word "regulation" and concludes that such word does not include the power to fix prices of alcoholic beverages for sale at retail.

■ It seems admitted that in the Casualty Rating Act, the legislature did not specifically grant to the Board rate fixing authority. The Board argues, however, that because the legislature prescribed guidelines and framework within which rates should be considered neither inadequate or excessive the power to fix rates was thereby created impliedly in the Board. Such argument overlooks the specific provisions in the Act which provide

**1364**

the method by which the Board shall proceed to apply such guidelines. The existence of guidelines is the legislatively delegated authority upon which the Board acts when it disapproves or suspends a rate. The existence in the Act of specific authority to disapprove a proposed rate or to suspend from continuing effectiveness an existing one excludes any implication of an additional power in the Board to fix a rate itself as it has attempted to do in this proceeding. The legislature intended what was expressed in the Act and nothing more.

The Board has other powers granted it by law not discussed in this opinion. This includes its general powers provided in 36 O.S.1971, § 907. Such general powers may be used to implement the powers and authority here indicated. The general powers shall not be deemed to enlarge the power pertaining to rates other than found in §§ 902 and 903, supra, and as determined by this opinion.

In the case at bar, the Board ordered the rating organization, ISO, to reduce its automobile insurance rates then in effect by ten percent (10%). The order exceeded its authority. The Board could only issue an order discontinuing the rates in use, stating when, within a reasonable period thereafter, such rate or rates shall be deemed no longer in effect. The Board cannot force a new filing. The Act provides:

> "Every insurer shall file with the Board, either directly or through a licensed rating organization of which it is a member or subscriber, all rates and rating plans and classifications which it uses or proposes to use in this state." (36 O.S.1971, § 903, subd. A).

Writing casualty insurance without approved rates would be a violation of the Act.

The order of the State Board for Property and Casualty Rates for Oklahoma, dated April 9, 1974, is reversed.

Reversed.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, V. C. J., dissents.