Dear Honorable Smith,
The Attorney General is in receipt of your request for an opinion in which you ask, in effect, the following question:
Can an insurance company lawfully exclude capital gains realized fromthe investment of reserves in the total amount of investment incomepresented to the State Board for Property and Casualty Rates pursuant toits application for a rate increase?
The question revolves around the responsibility of the State Board for Property and Casualty Rates (hereinafter referred to as "Board") to determine a reasonable insurance rate. That income derived from the investment of loss and unearned premium reserves accrue to the benefit of the premium payer is undisputed. What is controverted is a question of law presented to the Board by the application for a rate increase. Does investment income include profits derived from the purchase and subsequent sale of stocks and bonds? Or, is investment income limited to investment paid on bonds, stock dividends and other non-transfer sources of direct income? The problem is implicit in the determination of a reasonable rate, and any understanding of it must begin with the investment portfolio of the insurance company applicant. In a particular instance, that portfolio shows on its face that eighty percent (80%) of the reserves for losses and unearned premiums are invested in bonds. The applicant does not deny that these are tax free or low yield bonds. Indeed, the record before the Board establishes that Federal Income Tax Rate for the applicant was only 4.2 percent of income. The real profits derive from the transfers. The insurance company has purchased low yield, low interest bonds at a rate substantially below par value, and holds them until maturity or until optimum market conditions exist. It then sells or cashes the bonds at a profit which may be as high as between ten and fifteen percent of the original investment. As an applicant for a rate increase, the company adopts the position that the profits so absorbed should be treated by the Board as a "capital gain" and are not subject to consideration as investment income. The result is an income figure which reflects only the quantum of interest and dividends.
The question raised encompasses the rate setting powers of the Board with respect to both casualty insurance, 36 O.S. 901 — 36 O.S. 911 (1971) Article IX, and property insurance, 36 O.S. 1001 — 36 O.S. 1017 (1971) Article X . The following provisions of those statutes are applicable to your question. 36 O.S. 902 provides that rates for insurance shall not be excessive, inadequate or unfairly discriminatory, and specifies that no rate shall be held to be inadequate unless it is both unreasonably low for the insurance provided and that its continued use endangers the solvency of the insurer. An alternative basis for finding a rate inadequate relating only to the destruction of competition is also embodied in the statute. Sub-section B requires that in making such a determination, the Board give "due consideration" to:
 "B. . . . past and prospective loss experience within and outside the state, to physical hazards, to safety and loss prevention factors, to underwriting practice and judgment, to catastrophe hazards, if any, to a reasonable margin for the underwriting profit and contingencies; to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policy holders, members, or subscribers; . . . and to all other relevant factors within and outside the state." Emphasis added
36 O.S. 903 imposes upon every insurer the duty to file with the Board all rates, rating plans and classifications in use and proposed for use in this state. Sub-section B provides:
 "B. Whenever it shall be made to appear to the Board, either from its own information or from complaint of any party alleging to be aggrieved thereby, that there are reasonable grounds to believe that the rates on any or on all risks or classes of risks or kinds of insurance within the scope of this law are not in accordance with the terms of this law, it shall be the duty, and it shall have the full power and authority, to investigate and determine whether or not any or all of such rates meet the requisites of this Article." Emphasis added
Sub-section C provides in pertinent part that in the event a hearing is held to determine whether a filing complies with the provisions of Article IX the burden of proof shall rest on the insurer.
36 O.S. 907 confers upon the Board, in addition to the powers framed by other statutory provisions, "full power and authority" to enforce by regulations, orders, "or otherwise" each and all of the provisions of law relating to the said Board. The law relating to the power and authority of the Board shall be construed in accordance with "the full intent thereof," and, in addition to such powers, the Board shall have particular power and authority:
 "1. . . . to examine all records of insurers, advisory organizations and rating organizations and to require any or every insurer, agent, broker, advisory organization, and rating organization to furnish under oath such information as it may deem necessary for the administration of this law. The expense of such examination shall be paid by the insurer . . ." Emphasis added
Article X relating to property insurance embodies similar pro visions.
The statutes give the Board authority to regulate rates and practices. Great Central Insurance Company v. Birdwell, 273 P.2d 764, 766 (Okla. 1954). That authority includes the right to take into consideration all the elements and factors that properly have a bearing on the rate to be established. Committee of Oil Refiners v. State Insurance Board,133 P.2d 885, 886 (Okla. 1943). The right to take all relevant factors into consideration would be empty without sufficient investigatory powers. The statutes conferring such powers upon the Board are not to be narrowly construed. Whenever it appears to the Board that there are reasonable grounds to believe that the rates of an insurance company are not in accordance with the terms of the Casualty Rating Act, it has full power to investigate and make that determination. Insurance Services Office v. State Board of Property and Casualty Rates, 530 P.2d 1359,1363 (Okla. 1975). In addition to its investigatory powers the Board has the general powers provided in 36 O.S. 907 (1971). Insurance Services Office v. State Board for Property and Casualty Rates, supra, Page 1364. The burden of proof is upon the insurance company to show that its filing and proposed program is in compliance with law. Standard National Insurance Company v. State Board of Property and Casualty Rates,520 P.2d 672 (Okla. 1974).
Title 36 O.S. 902 (1971), in Sub-section A, directs the Board to protect the people from excessive insurance rates, and in Subsection B imposes upon the Board a duty to take into consideration all relevant factors bearing upon the question of what constitutes a reasonable margin of profit. Oklahoma State AFL-CIO v. State Board of Property and Casualty Rates, 463 P.2d 693 (Okla. 1970), held:
 "On the question of whether the Board should have given due consideration to income from the investment of unearned premium reserve and loss reserve in approving casualty rates 36 O.S. 902 (1961), Subdivision B provides that `due consideration shall be given * * * to a reasonable margin for underwriting profit and contingencies * * * and to all other relevant factors * * *.' Identical language is found in 36 O.S. 1003 (1961), Subdivision A, Paragraph 3 regarding homeowners' property insurance rates. Our conclusion that income from unearned premium and loss reserves is `relevant' is based upon the fact that under the statutes these reserves are actually in the nature of trust funds held by the insurer for the benefit of the policyholders.
 "In 36 O.S. 902, Subdivision A Casualty and 36 O.S. 1001 (1961) Property, it is provided that rates for insurance shall not be excessive, inadequate, or unfairly discriminatory. Of course, it must have been the intention of the Legislature that the people must be protected against excessive insurance rates.
 "Considering the foregoing, it is apparent that the Board in its former rate orders either did not give due consideration to income from the investment of unearned premium and loss reserves, as we now hold it should have done, or did not give protestants an adequate opportunity to cross-examine and present their protest.
 ". . . evidence should be heard as to what will constitute a reasonable margin for underwriting profit and contingencies, and all relevant factors. The burden of proof rests upon the insurer or rating bureau. 36 O.S. 903, Subdivision C. Subsequently applying the same holding to the provisions of 36 O.S. 1003 — 36 O.S. 1005 (1961) " Emphasis added
 It is therefore. the opinion of the Attorney General that your questionbe answered in the negative, and that the said answer encompass thefollowing conclusions of law:
 1. An insurance company cannot lawfully exclude "capitol gains"realized from the investment of reserves in the total amount ofinvestment income presented to the State Board for Property and CasualtyRates pursuant to its application for a rate increase.
 2. There is no lawful basis for the State Board for Property andCasualty Rates to exclude capitol gains from investment income whenconsidering an application for a rate increase.
 3. The Board has the authority and mandatory duty to examine all of thebooks and records of an applicant as a predicate to its determination ofwhat may or may not be considered in establishing the rates of theapplicant.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN PAUL JOHNSON, ASSISTANT ATTORNEY GENERAL